## Roth *versus* Crissy *et al.*
## The Same *versus* Laguerenne.

An agent who, by not disclosing the name of his principal, has incurred a personal liability, may be rendered a competent witness by a release.

A party who seeks to recover back the consideration paid for a forged instrument, must, before suit, offer to return the note to the defendant, unless he waive the right.

ERROR to the District Court of *Philadelphia.*

These were two actions of *assumpsit*, the one brought by Crissy & Markley, and the other by Peter L. Laguerenne, against Charles Roth, to recover back the amount of two promissory notes, one of them made by William H. Fleming, and purporting to have been endorsed by William H. Richards; and the other purporting to have been made by Richards, and endorsed by Fleming; which had been purchased by the plaintiffs from the defendant. The signature of Richards upon these notes turned out to be a forgery; that of Fleming was genuine.

The declarations were for money had and received to the use of the plaintiffs, to which the defendant pleaded the general issue.

On the trial, the plaintiffs offered as a witness Oliver Fuller, a note broker, by whom the note sold to Crissy & Markley had been negotiated, as the agent of the defendant, without disclosing the name of his principal. The defendant objected to his competency on the ground of his personal liability; whereupon the plaintiffs gave him a release, and the court admitted the testimony, notwithstanding a renewal of the objection, and sealed a bill of exceptions.

The plaintiffs proved the forgery of the notes, and the consideration paid for them; and there was some slight evidence, from which it might be inferred that the defendant had waived a return of the notes. And after the plaintiffs had closed they tendered the notes to the defendant in open court, who refused to accept them, on the ground that they had not been tendered within a reasonable time.

The defendant's counsel requested the court to charge the jury that the plaintiffs could not recover in these actions, inasmuch as

VOL. VI.—10

[Roth *v.* Crissy *et al.*]

they did not, before instituting them, return or tender to the defendant, the notes upon which there was a forged signature.

In answer to which point the learned judge charged the jury, that the plaintiffs were bound to pursue their remedy with due diligence, and to tender the notes to the defendant within a reasonable time; but that, if the language of the defendant justified the belief that he would not accept the tender, nor admit his liability to the plaintiffs, then they would be excused from restoring the notes. The defendant's counsel excepted to the charge, and the judge sealed a bill of exceptions.

The jury, in each case, found a verdict for the plaintiffs. The defendant then sued out these writs, and assigned for error:— 1. The admission of Fuller as a witness. 2. The charge of the court, as to the waiver of his right to a return of the notes.

*Guillou*, for plaintiffs in error.—Fuller was clearly interested, and could not be rendered competent by a release: Hickling *v.* Fitch, 1 *Miles* 208, approved in Gilpin *v.* Howell, 5 *Barr* 51; McBrian *v.* Fortune, 3 *Campb.* 317; Ripley *v.* Thomson, 22 *Eng. C. L.* 433; Sewall *v.* Fitch, 8 *Cow.* 218; Post *v.* Avery, 5 *W. & S.* 510; Wells *v.* Peck, 11 *Harris* 156; Haus *v.* Palmer, 9 *Harris* 298; Phinney *v.* Tracey, 1 *Barr* 173; Wilkinson *v.* Turnpike Company, 6 *Barr* 401; Wolf *v.* Finks, 1 *Barr* 441; Patterson *v.* Reed, 7 *W. & S.* 146; Taylor *v.* Gitt, 10 *Barr* 430; Grayson *v.* Bannon, 8 *Watts* 528–9; Griffith *v.* Reford, 1 *Rawle* 197; Ludwig *v.* Meyre, 5 *W. & S.* 436.

If the notes were forgeries, before the plaintiffs could recover on a count for money had and received, they were bound to restore them: Fielder *v.* Starkin, 1 *H. Black.* 19; Dutch *v.* Warren, 1 *Str.* 406; Moses *v.* Macferlan, 2 *Burr.* 1009, 1012; Dewey *v.* Erie Borough, 2 *Harris* 213. The precise point was settled by the High Court of Errors and Appeals, in Ritchie *v.* Summers, 3 *Yeates* 543. To rescind the contract, one party must place the other where he first stood: Pittsburgh Turnpike Company *v.* Commonwealth, 2 *Watts* 433–4. The tender at the bar was not sufficient: Snyder *v.* Wolfley, 8 *S. & R.* 332; Magaw *v.* Lothrop, 4 *W. & S.* 321.

There was no evidence to justify the court below in leaving to the jury the question, whether the defendant had waived his right to have the notes restored to him: Blight *v.* Ashley, 1 *Pet. C. C.* 24; Jarmin *v.* Algar, 2 *C. & P.* 249; Last *v.* Benton, 2 *Marsh.* 478; Bowlby *v.* Bell, 3 *Mann. Grang. & Scott* 284.

*Gilpin* and *G. M. Wharton*, for Crissy & Markley, and *J. A. Phillips*, for Laguerenne.—Fuller was a competent witness, under the facts of the case, either with or without a release: Gilpin *v.* Howell, 5 *Barr* 50–1, and cases there cited.

[Roth *v.* Crissy *et al.*]

In a case like the present, a previous tender of the notes was unnecessary.

It is said, "This precise point was settled in Ritchie *v.* Summers, 3 *Yeates* 543." We think not. Let us examine Ritchie *v.* Summers. It was a suit to recover money paid for forged paper. It came before the Supreme Court on a special verdict. In the special verdict, there is no finding of tender or waiver, or of any fact that touches either tender or waiver. They seem to have been ignored by counsel, jury, and court below. It was fully argued on the merits, and opinions delivered, affirming the judgment for plaintiff, without any reference to them. The affirmance was in 1803. A note added to the case says, "A writ of error was afterwards brought to the High Court of Errors and Appeals, and the judgment reversed on a new ground, taken July 1807, that the suit was not maintainable by reason of the note not having been re-delivered or tendered to the defendant before bringing the action."(*a*)

(*a*) The case of Summers *v.* Ritchie was argued in the High Court of Errors and Appeals, before Chief Justice TILGHMAN, and Justices RUSH, WILSON, SPADE, HAMILTON, WALKER, and COOPER, on the 13th of July 1807, by *Tod*, *Rawle*, and *Levy*, for the plaintiffs in error, and by *Gibson* and *Lewis*, for the defendant in error.

The special verdict will be found in 3 *Yeates* 531. The following opinion, heretofore unreported, was delivered in the High Court of Errors and Appeals:

PER CURIAM.—The objections to the judgment given by the Supreme Court for the plaintiff may be reduced to two heads.

1. Does it result from the facts found by the verdict that Summers and Coates were responsible for the forgery of John Morton's name by any warranty express or implied?

2. Supposing that they were so responsible, can the plaintiff recover in the present form of action?

In speaking to the first point many important questions have been discussed concerning the law of warranty on the sale of goods and chattels. On these questions the court decline giving any opinion, it being unnecessary to the decision of the cause; especially as it does not clearly appear by the verdict what passed between the parties on the sale of the notes.

But taking it for granted that the defendants undertook that the endorsement of Morton was genuine, the plaintiff might either retain the note, and sue for the breach of the warranty, in which case he would recover damages according to the loss sustained, or return the note, in case the defendants were willing to receive it, and recover the whole money paid in the present form of action, for money had and received by the defendants for his use. That a man should retain the property which he purchased, and at the same time recover from the seller the whole amount of the purchase-money—that he should be permitted both to affirm and to annul the sale—is contrary to reason, to justice, and to the authorities which have been produced on the argument. It is not contended by the plaintiff's counsel that this could be done in the common case of a sale of goods—but it is urged that the present action may be supported without returning the notes, for two reasons: 1st, Because it was the duty of the plaintiff to hold the note till he was satisfied that the defendants were not guilty of the forgery; 2d, Because the note was of no value.

1st. As to the first reason, it might be very proper for the plaintiff to inquire

[*Roth v. Crissy et al.*]

The report in this note is not very satisfactory, but even as reported, there is a marked distinction between it and the case now before this court. In our case, the jury have found that there was a waiver of tender, and it cannot be denied—indeed it

who was the author of the forgery; indeed it was his duty. But he might have satisfied himself on this subject before he brought his action. It does not appear that he even had any cause to suspect the defendants, but it does appear from the verdict that there was not even the appearance of improper conduct on the part of the defendants. The court therefore do not think this reason sufficient to take the case out of the common rule.

2d. The second reason, relied on by the plaintiff, is that the note was of no value. If by saying it was of no value, it is meant that Joseph Thomas was insolvent, it may be answered that the court can know nothing of his solvency or insolvency. No fact can be known to them but what is found in the ver-dict. The insolvency of Thomas is not found, and cannot be presumed. But there is another sense in which it has been said that the note could be of no value to the defendants, that is to say, that they could maintain no action on it against Thomas, because the name of Morton, the payee, was forged; and, in support of this principle, the case of Mead *v.* Young, 4 *T. R.* 28, was cited, which was an action by the endorsee of a bill of exchange against the acceptor. The bill was drawn at Dunkirk, by Christian, on Young in London, payable to H. Davis or order, and being put in the foreign mail enclosed in a letter from Christian, it got into the hands of another H. Davis than the one in whose favour it was drawn. Young accepted it, and afterwards the *false Davis* put it into circulation, and Young having discovered the trick, refused to pay the bill; and it was held, that the endorsee could not recover against him, although he came by it fairly in the course of business, and for a full consideration. In that case the court were of opinion that the bill was never endorsed by the person to whom it was made payable, and consequently the plaintiff failed in supporting his declaration, in which such endorsement was averred. If the plaintiff had recovered there, an injury would have been done, either to the drawer, or to the person to whom the bill was really intended to be payable—the bill was sent forward directed to the *true* H. Davis, and the *false* one got hold of it by fraud. But the case before us is evidently different. Although the note of J. Thomas was drawn payable to J. Morton, yet the jury do not find that it was ever delivered to Morton or even seen by him, or that he ever had or was intended to have any property in it. It was put in circulation by Thomas himself, who delivered it to defendants, and under those circumstances the court have no doubt, but that he would not be permitted to screen himself from the action of the holder of the note by setting up the forgery of Morton's name. Whether an action might have been supported in the name of Morton for the use of the holder, or in the holder's own name, by declaring as on a note payable to the bearer, it is unnecessary now to determine. It is the genius of the common law to adapt itself to circumstances, and to invent new remedies for new cases as they arise. As soon as it became a custom to draw bills of exchange payable to fictitious persons, the rule that the handwriting of the payee must be proved in an action against the acceptor was dispensed with—otherwise no recovery could be had at all, and the law would not endure that payment should be evaded by such artifices as these. So a note drawn payable to a fictitious person has been considered as payable to bearer.

It appears to the court, therefore, that the reasons which prevent the pur-chaser of goods from supporting an action for money had and received against the seller, unless the goods have been re-delivered, apply with full force to the case under consideration. On this point, it is the unanimous opinion of the court, that the judgment of the Supreme Court was erroneous and must be reversed.

[Roth *v.* Crissy *et al.*]

is conceded on the other side—that tender "may be dispensed with," or waived.

The opinion of the court was delivered by

PORTER, J.—Was the plaintiff's chief witness competent? He was a note-broker, and with this species of broker it is not unusual to purchase the paper in which they traffic, and to sell it to their customers. If the witness had been the owner of the notes for one instant of time, he would have been incompetent; for his testimony would have fallen within the range of that class of cases which commenced with Post *v.* Avery, and which has since flowed in an almost unbroken current. His testimony to the contrary is full and clear. The policy of allowing an agent to purify himself by his own oath of the suspicion of interest, is too firmly imbedded in our system to be upturned at this day. Occasionally the effect may be mischievous; but where so large a part of the business of men is committed to the hands of agents, the mischief of closing their mouths on the transactions they conduct would be found infinitely greater. By not disclosing at the time the name of his principal, the agent encounters the risk of personal liability. The witness in this case did so, but the release set him free. After this, he stood before the jury disconnected from the transaction in every respect, save in his knowledge of what had taken place.

For obvious reasons, the defendant was entitled to a return of the notes, unless he waived the right. In the case of Laguerenne, the proof on this point was slight. It consisted of a conversation between the defendant and the plaintiffs' clerk, in which the former offered to pay a note he had guarantied, and said: "As to the other note (that in question), I cannot be responsible; you will have to look to the assignee of Fleming's estate for it." This was that spark of evidence of which we hear so much. The court admitted it, and could not have done otherwise. The jury heard it, and chose to consider it sufficient. If they gave it undue weight, we have no power to correct the error. On a point less formal, we should feel more regret.

The other questions were correctly decided.

Judgments affirmed.