## Cornelius *v.* The Bank.

*Banks and banking—Discount of forged paper—Right of bank to rescind.*

The maker of a note, with a forged indorsement, who had the same discounted by a bank and proceeds credited to his account, having died before maturity of the note, the bank, on discovery of the fraud, has a right to charge off the apparent balance due upon the account of the decedent, which is to withdraw the credit which had been given him when the contract was made.

*Rescission of contract—Tender of forged paper—Banks and banking.*

The indorsement being forged it was not necessary for the bank upon the rescission of the contract to surrender the note and with it the evidence necessary to establish the bank's position.

The proper course to pursue in a suit by the administratrix is for the trial court to impound the note, to the end that the interest of all parties may be protected.

Argued April 24, 1900. Appeal, No. 107, April T., 1900, by defendant, in a suit of Katharine S. Cornelius, executrix of Charles E. Cornelius, against Lincoln National Bank, from order of C. P. No. 2, Allegheny Co., Oct. T., 1899, No. 740, making absolute rule for judgment for want of a sufficient affidavit of defense. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by W. D. PORTER, J.

Assumpsit. Before WHITE, P. J.

The following facts appear from the opinion of the court below.

C. E. Cornelius had a large bank account in defendant bank, running from November 24, 1896, to October 15, 1898, on which day he died. At that date, the balance standing on the account to Cornelius was $974.95. This action by his executrix is to recover that amount.

The affidavit of defense sets up these facts: That on September 9, 1898, Cornelius had a note of that date, for $1,000 at sixty days, drawn by him and indorsed by J. W. Over, discounted by the bank, and the proceeds placed to his credit; that the note was discounted upon the faith and in the belief

that the signature of J. W. Over was genuine; that the note was not paid at maturity and duly protested; that the name of J. W. Over, as the indorser, was a forgery; that about February 7, 1899, the bank learned for the first time that the signature was a forgery, and immediately rescinded the contract between Cornelius and it, and appropriated, by charging back, the $974.95 on account of said note, which exhausted the balance and left nothing due on the bank account.

Judgment for plaintiff for $1,015.25. Defendant appealed.

*Error assigned* was making absolute rule for judgment for want of a sufficient affidavit of defense, in favor of plaintiff.

*James R. Sterrett*, for appellant.—It was held in Dougherty & Co. v. Central National Bank, 93 Pa. 227, that where a lender before he pays over money on a borrower's note discovers that the borrower is insolvent, he has a right of a similar nature to that of stoppage in transitu. He may tender back the discounted note and refuse payment to the borrower, and the latter's assignees have no superior rights to him. The same principle was reaffirmed in Bank v. Huver, 114 Pa. 216.

Conceding, for the sake of argument, that a debt not due, at the time of the death of an insolvent debtor, cannot be set off against a claim owing his estate by the same person, we contend that this principle does not apply to this case. If it does, then the law recognizes a fraud. His creditors would be permitted to profit by his fraud, amounting to a crime. A principle of law is never so applied as to recognize or protect a crime: Coble v. Nonemaker, 78 Pa. 501.

A contract brought about by a fraud, amounting to a crime, is absolutely void. Such a contract cannot be ratified, because the ratification of the act from which it springs is opposed to public policy: McHugh v. Schuylkill Co., 67 Pa. 391; Schisler v. Vandike, 92 Pa. 447.

Applying these principles to the case at bar, it seems clear that the claim of the bank against Cornelius was due in his lifetime, as to hold otherwise, would be to recognize and make binding a contract obtained by the commission of a crime, which, under all the authorities, is contrary to public policy.

*H. A. Davis*, for appellee.—It is unquestionably the law that the balance of a general bank account to the credit of an insolvent decedent is assets for the payment of his debts and should go to his executor for that purpose without any deduction for debts coming due to the bank by decedent after decedent's death.   In other words the death fixes status of accounts as to claims against the estate and renders the fund in bank liable for all debts of the decedent according to statute.   To recapitulate :

1. A general balance should go to the executrix.

2. This is a general balance.

3. The bank cannot set off against it a note or claim of any kind not yet due.

4. Unless the discount was a contract void ab initio the fact of its avoidance when the fraud was discovered long after decedent's death did not create a debt existing at the time of decedent's death.

5. It certainly was not a contract void ab initio for if the estate was solvent the bank would undoubtedly have claimed upon the note.

OPINION BY W. D. PORTER, J., July 26, 1900 :

This action was brought to recover the amount of a balance apparently due upon a bank account, which was open and unsettled at the death of plaintiff's testator.   Attached to and made part of plaintiff's statement was an itemized account of the credits to which it was alleged the decedent was entitled. The affidavit of defense challenges but one of these items. As that item, however, is larger than the apparent balance due, the defense involves the whole of plaintiff's claim.   Plaintiff's statement avers that Charles E. Cornelius died on October 15, 1898, and that he was and his estate is insolvent.   The item in controversy represents the proceeds of a note, which, as we must assume the allegations of the affidavit of defense to be true, was discounted for the decedent by the defendant, under the circumstances below stated.   " On September 9, 1898, the said Charles E. Cornelius made his certain promissory note to the order of and indorsed by J. W. Over, at sixty days, for $1,000, which note was discounted for said Charles E. Cornelius, at his request, by the defendant bank, on said day, and the proceeds

thereof, $989.85, less the discount, placed to the credit of said Charles E. Cornelius in his said account on the books of said bank; that the proceeds of said note went to make up the said balance of $974.95 standing to the credit of said Cornelius at the time of his decease.    That when said note fell due it was not paid, and thereupon it was protested for nonpayment; that the defendant discounted said note upon the faith and in the belief that the signature of J. W. Over, the indorser thereon, was genuine; that on or about February 7, 1899, said bank learned for the first time that the signature of said J. W. Over on said note was a forgery, and immediately, on that day, said bank rescinded the contract between said Charles E. Cornelius and it, and at the same time appropriated the balance standing to the credit of said Cornelius to his indebtedness, on said note, to the bank, and his account was then closed by charging back the said balance of $974.95 standing to his credit, so as aforesaid appropriated; that defendant is informed, believes and expects to be able to prove on the trial of this case that the said Charles E. Cornelius forged the name of J. W. Over as indorser on said note, and thus deceived, cheated and defrauded said bank." It will be observed that Cornelius died before the note became due.    The plaintiff's statement shows that within a short time after the defendant bank discovered the forgery she had notice of the cancelation of the credit which the decedent had obtained upon the faith of the indorsement.

The learned court below was of opinion that: " The real question in the case is, can the defendant bank set up the fraud of Cornelius as a set-off to the suit of the administratrix for the balance due on his bank account, and thus obtain a preference to the other creditors ? "    The court being of opinion that this could not be done, made absolute a rule for judgment for want of sufficient affidavit of defense.    We must hold that this is not a case of an attempt to prevent a recovery of a sum due at the death of the testator by the interposition of a counter claim not becoming due until after that event.    The fraud upon which the defendant relied to defeat a recovery was in the very foundation of the contract, upon which the plaintiff must rely in order to establish her right to recover..    When the bank gave Cornelius credit on his account for the amount of the proceeds of the note, they simply in-

creased by that sum the amount to which he was apparently entitled to draw upon them.    This was nothing more than a promise to pay, and upon that promise this plaintiff must finally rely.    The consideration for that promise was the note.   What the defendant here seeks is recoupment, in the strict sense of that term.    The facts averred go to the very life of the contract, through which alone the liability of the defendant can arise.    It is true that the conduct of the decedent in making the contract involved a tort, but that tort is not separable from the contract, and, in an action for the resulting injury, the contract must have furnished the measure of damages.    The facts averred did not involve the doctrine of set-off; they directly attacked the plaintiff's right to recover, and to entitle the defendant to offer them in evidence upon the trial the proper plea would have been nonassumpsit:   Heck v. Shener, 4 S. & R. 248, 258; Hunt v. Gilmore, 59 Pa. 450; Uhler v. Sanderson, 38 Pa. 128; Glennon v. Lebanon Mfg. Co. 140 Pa. 594; Watson v. Philadelphia, 142 Pa. 179.

The decedent was the maker of the note in question.    The name of the only indorser, the payee, was forged.   The decedent brought the note in this condition to the bank and there had it discounted.    Proof of these facts alone would have been sufficient to sustain a finding by a jury that the decedent had been guilty of the forgery.    The affidavit of defense alleged these facts positively, and the assertion that the defendant "is informed, believes and expects to be able to prove on the trial of the case that the said Charles E. Cornelius forged the name of J. W. Over, as indorser on said note," is therefore, to be accepted as true.    Even if the bank had paid over the money to Cornelius, it might at once, upon discovery of the fraud, have brought an action in assumpsit against Cornelius for the recovery of the money to be paid, without waiting for the note to become due: Ritchie v. Summers, 3 Yeates, 531; Roth v. Crissy, 30 Pa. 145.    Or the bank might have brought an action of deceit, in which the measure of damages would have been the difference between the value of that which it did receive, and that which it was led to believe that it was receiving: that is, the difference between the value of the note of an insolvent maker, with a forged indorsement, and that of the note of the same maker, indorsed by a party known to be solvent and upon

whose responsibility the affidavit of defense alleges that the bank relied. Cornelius was legally liable, in either of these forms of action, the moment he discounted the note, and the present rights of the parties are not affected by the fact that the bank did not discover the fraud until after his death. To sustain an action of assumpsit, upon such grounds, the bank would have had to rescind the contract, which would have in-involved a surrender of its rights under the note. It would not have been competent for Over to have ratified the forgery of his name, which involved a crime, for such a proceeding would have been against public policy: Garrett v. Gonter, 42 Pa. 143; McHugh v. County of Schuylkill, 67 Pa. 391; Shisler v. Vandike, 92 Pa. 447; Howard v. Turner, 155 Pa. 349. The bank, however, stood in a different position. The contract of Cornelius, as maker of the note, was binding upon him, and the bank might have elected to rely upon that contract: Roth v. Crissy, supra; Summers v. Ritchie, 30 Pa. 145 (see note). If collateral securities had passed with the note they might have been applied to the payment thereof. The bank could not both rescind the contract and assert its rights upon the note. The affidavit of defense avers that the bank rescinded the contract, but it asserts that it " appropriated the said balance standing to the credit of said Cornelius to his indebtedness, on said note, to the defendant bank, and his account was then closed by charging back the said balance of $974.95 standing to his credit." It is manifest that the defendant here made a mistake of law, as to the rights which accrue to it upon a rescission of the contract. To appropriate the money upon the note, was to assert a right under the contract; while to charge off the apparent balance due upon the account of decedent was to withdraw the credit which had been given him when the contract was made. The latter course was the proper one to pursue in a rescission of the contract; the defendant had a right to cancel the credit which it had extended as the result of the fraud, and decline to pay over the balance which had not been checked out. If the mistake of the bank had misled the plaintiff and induced her to part with any property or waive any right, we would have been constrained to hold that the bank had affirmed the contract. But the plaintiff had no right of action over, upon the note, against any other party, and she

was promptly notified of the withdrawal of the credit, which was the vital element in the rescission of the contract, and the blunder of the bank wrought no injury to the estate.

When the bank discovered the fraud it was put to the election of either ratifying or rescinding the contract. The election to rescind must have been exercised with reasonable promptness and notice of the rescission promptly given to the other party. Omission to repudiate within a reasonable time is evidence, and may be conclusive evidence of an election to affirm the contract. The rule is, "prompt repudiation, and restitution as far as possible." The party rescinding a contract is, ordinarily, required to tender a return of the property or security which was the consideration upon which it was based: Howard v. Turner, 155 Pa. 349; Acetylene Company v. Smith, 10 Pa. Superior Ct. 61. It has been recognized, however, as an exception to this rule, that if the thing, the consideration of which is sought to be recovered back, be entirely worthless, there is no duty to return it: Babcock v. Case, 61 Pa. 427; Beetem v. Burkholder, 69 Pa. 249. The defendant did not, upon rescinding the contract, tender to plaintiff the note which had passed thereunder. Does its failure to do so defeat its right to allege a rescission? The case would seem to come within the exception to the rule recognized in the cases last cited. The plaintiff in her statement avers that the estate of the maker of the note in question is insolvent, and, as the name of the only indorser is forged, the note is, therefore, without value.

Had the bank discovered the fraud during the lifetime of Cornelius, it would have had the right to rescind the contract, without returning to him the note, the negotiation of which was, upon his part, a criminal offense, fraudulently uttering a written instrument. The law does not require that a party, in order to rescind a contract, shall place in the hands of a criminal the evidence of his crime. There are good reasons for holding that, as against the present plaintiff, the defendant ought not to be required to surrender the note, for that instrument contained within itself the only evidence necessary to establish an important fact vital to the exercise of plaintiff's right of rescission. Without being prepared to produce the note the plaintiff could not possibly be able to establish that

the signature of the indorser was forged. The proper course to pursue in this case is for the court below to order the note in controversy to be impounded, to the end that the interest of all the parties may be protected.

The judgment is reversed and a procedendo awarded.