J-S11027-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES ROBERT SCHOLL | |
| Appellant | No. 908 MDA 2014 |

Appeal from the Judgment of Sentence May 8, 2014
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001683-2013

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED JUNE 02, 2015**

James Robert Scholl brings this appeal from the judgment of sentence imposed May 8, 2014, in the Court of Common Pleas of Centre County.  A jury found Scholl guilty of aggravated assault — attempted serious bodily injury (three counts), aggravated assault — official in fear (three counts), terroristic threats (three counts), simple assault (three counts), recklessly endangering another person (three counts), and resisting arrest (one count).[1]  The trial court sentenced Scholl to an aggregate term of 16 to 32 years' imprisonment.[2]  Scholl challenges the sufficiency of the evidence to

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 2702(a)(6), 2706(a)(1), 2701(a)(1), 2705, and 5104(a)(1), respectively.  The trial court found Scholl guilty of the summary offense of harassment, 18 Pa.C.S. § 2709.

[2] The trial court sentenced Scholl to consecutive terms of five to ten years' imprisonment on the three counts of aggravated assault under § 2702(a)(1),
*(Footnote Continued Next Page)*

sustain his convictions for aggravated assault as a felony of the first degree, and his conviction for resisting arrest. Based upon the following, we vacate the judgment of sentence and remand the case for resentencing.

The trial court has aptly stated the facts underlying this appeal:

[Scholl's] charges stem from an incident in which Officers Chambers, Albright, and Shaffer responded to a call regarding a domestic incident. Testimony from each officer indicated a call to respond to 112 Zurich Road in Centre County was received on September 14, 2013. The call related to a female who had briefly been held against her will by an occupant of the trailer. The caller indicated a gun was in the trailer, but she did not believe the other occupant had possession of the firearm at the time she called the police.

Officer Shaffer, Officer Albright, and Officer Chambers all responded to [Scholl's] address. Officer Shaffer spoke with Brianna Baxter, [Scholl's] girlfriend. Officer Shaffer testified he went around to the side of the trailer to determine whether a side door was unlocked and observed [Scholl] briefly look out the window, then retreat back into the trailer. Officer Shaffer attempted to notify the other officers he had observed [Scholl], but they could not hear him because of the volume of the music coming from the trailer. As Officer Shaffer rounded the trailer and approached the front porch, he testified he heard one of the officers ordering [Scholl] to drop his weapon. Officer Chambers testified he was standing in front of the door when [Scholl] opened the door with the firearm. When [Scholl] saw Officer Chambers, he raised the gun and pointed it at Officer Chambers, who immediately placed his hands over the weapon and attempted to wrestle it from [Scholl].

_(Footnote Continued)_ ⸻

and one to two years' imprisonment on the count of person not to possess a firearm. The court imposed a concurrent term of nine to eighteen months on the count for resisting arrest. On the summary charge of harassment, the court ordered Scholl to pay all costs.

As Officer Shaffer entered the trailer, he observed Officers Albright and Chambers struggling on the floor with [Scholl] in the living room area. [Scholl] was holding the gun and Officer Chambers was clasping it with both hands, attempting to gain control of it and keep it from pointing at any of the officers. [Scholl] continued to attempt to point the gun at the officers while they struggled with him. All three officers testified the gun was pointed at each of them at least once during the encounter, and they felt it was a "life and death" struggle – they were all in fear of [Scholl] discharging the weapon at them. Officer Albright testified he observed [Scholl's] finger on the trigger of the weapon during the encounter, and all three officers testified the gun was pointed at each of them at least once during the incident.

After officers were able to secure the gun, they testified [Scholl] continued to struggle, refusing to put his hands behind his back, tensing his muscles, and attempting to keep his hands at his side to prevent the officers from handcuffing him. [Scholl] did not cease struggling until officers were able to secure one hand with a handcuff. At that point, [Scholl] complied with instructions and officers were able to handcuff him.

Sergeant Ryan Hendrick testified he responded to the call after the struggle. He took [Scholl] into custody and questioned him. Sergeant Hendrick is the Centre County Alcohol Task Force Coordinator, and has extensive experience with intoxicated individuals. He noticed an odor of an alcoholic beverage about [Scholl's] person, but did not feel [Scholl] was so intoxicated that he was unable to comprehend questions or engage in an interview. [Scholl] answered all questions coherently and appropriately, and was not stumbling or otherwise unable to physically navigate.

The Commonwealth played the audio recording of the interview for the jury. In the interview, [Scholl] indicated he took the pistol from the drawer and put the clip in it, but did not actually pull the slide on the weapon back to chamber a round. This is consistent with the testimony from Officer Chambers, who testified when he cleared the weapon after the struggle with [Scholl], the clip was in the weapon but there was not a round in the chamber.

[Scholl] maintained he took the gun to the door because he heard a noise outside and suspected someone was stealing his girlfriend's purse, which he had placed on the porch earlier in the evening during their argument. He testified he pointed the weapon at the officers because he was startled to see them standing on the porch when he opened the door, and was unable to drop the gun when ordered because Officer Chambers was pressing it into his hand. He also testified he was extremely intoxicated throughout the period in question, but the Court notes he appeared able to recall almost the entire incident when testifying. The only significant part of the encounter [Scholl] alleged he had no recollection whatsoever of was when he gave a statement to Sergeant Hendrick after the incident.

Trial Court Opinion, 5/21/2014, at 2-4 (record citations omitted).

A jury convicted Scholl of the above stated charges and, following the denial of post sentence motions, this appeal followed.[3]

Initially, we state our standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while

_____

[3] Scholl timely complied with the order of the trial court to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

> passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) (citation omitted), *appeal denied*, 62 A.3d 379 (Pa. 2013).

Scholl first challenges the sufficiency of the evidence to sustain his three convictions of aggravated assault, 18 Pa.C.S. § 2702(a)(1), graded as a felony of the first degree.[4]

Under Section 2702(a)(1), a person may be convicted of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" means "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "For aggravated assault purposes, an 'attempt ' is found where the accused, with the required specific intent, acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another." *Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005), *appeal denied*, 879 A.2d 781 (Pa. 2005). Such intent

---

[4] *See* 18 Pa.C.S. § 2702(b) ("Aggravated assault under subsection (a)(1), (2) and (9) is a felony of the first degree. Aggravated assault under subsection (a)(3), (4), (5), (6), (7) and (8) is a felony of the second degree.").

may be proven circumstantially. *Commonwealth v. Rightley*, 617 A.2d 1289, 1295 (Pa. Super. 1992).

Scholl claims "[t]he evidence was insufficient to prove beyond a reasonable doubt that [he] possessed the requisite specific intent to cause serious bodily injury to Officer Chambers, Sergeant Albright, and Officer Shaffer, and that he took a 'substantial step' towards inflicting serious bodily injury." Scholl's Brief, at 21. Specifically, Scholl argues that he

> never fired the gun, nor did he ever attempt to discharge the gun. Upon examination, the clip or magazine contained one single round. There were no rounds in the chamber as the firearm was unprimed. In order for [Scholl] to actually fire the gun, he would have had to rack the slide with his hand to chamber a round from the clip or magazine into the chamber. [Scholl] never uttered any verbal threats to fire the gun or to harm the officers. In fact, from the time the trailer door opened until he was placed in handcuffs, [Scholl] did not say anything at all.

*Id.* at 28 (record citations omitted). In support of his argument, Scholl cites to case authority for the proposition that the mere act of pointing a gun at another, without more, does not constitute aggravated assault. *See* Scholl's Brief at 25-28, *citing* *Commonwealth v. Matthew*, 909 A.2d 1254 (Pa. 2006), *Commonwealth v. Alford*, 880 A.2d 666 (Pa. Super. 2005), and *Commonwealth v. Savage*, 418 A.2d 629, 632 (Pa. Super. 1980).

In *Alford*, the defendant, a jail escapee, was convicted under § 2702(a)(1) of aggravated assault after he pounded on a woman's door, was refused entry, and then momentarily pointed a gun through her front-door window, after which she fled the house through the back door. In

reversing that conviction, this Court noted, "It is well settled that merely pointing a gun at another person in a threat to cause serious bodily injury does not constitute an aggravated assault." 880 A.2d at 671; *see also Savage, supra.*

*Alford* was followed by our Supreme Court's later pronouncement in *Matthew, supra*. In *Matthew*, the defendant was convicted of aggravated assault under § 2701(a)(1) after he first placed a loaded gun against the victim's throat, continued to restrain the victim throughout the encounter by pointing the gun at him, and threatened to kill him. The Supreme Court upheld the sufficiency of the evidence supporting that conviction. The *Matthew* Court reaffirmed that the totality of the circumstances are examined to determine if a defendant demonstrated the intent to inflict serious bodily injury. *Matthew,* 909 A.2d at 1258. The Court concluded that the defendant "attempted to inflict serious bodily injury upon [the victim] and intended to do so" in light of the fact that he "placed a loaded gun against [the victim's] throat, repeatedly pointed it at him, and threatened to kill him seven to ten times." *Id.* at 1258. Significantly, the *Matthew* Court continued that, if the "threats alone were not enough to establish his intent, the fact-finder could determine his intent from pushing the loaded gun against [the victim's] throat and otherwise pointing it at him." *Id.* at 1259.

Here, the trial court rejected Scholl's argument, as follows:

The evidence showed [Scholl] pointed the loaded weapon at the officers. The Court acknowledges this alone is insufficient to infer the specific intent to injure required for aggravated assault.

- 7 -

However, when combined with the testimony of [Scholl's] finger on the trigger and continued attempts to direct the firearm at the officers, the evidence was sufficient to establish the required intent to cause serious bodily injury … to the officers. The mere fact that the officers were able to overpower [Scholl] and take the weapon from him before he was able to fire it does not negate his actions nor the intent they demonstrate.

Further, the act of pointing the loaded gun with his finger on the trigger and his continuing attempt to direct the weapon at officers while they were attempting to disarm him was also [a] substantial step toward perpetrating serious bodily injury upon them. Again, simply because the officers were able to overpower [Scholl] and stop him from firing the weapon does not negate the intent demonstrated by his actions. Therefore, the evidence is sufficient to support the "intent" and "substantial step" elements ….

Trial Court Opinion, 5/21/2014, at 5 (citation omitted). Based on our review, we agree with the trial court that Scholl's sufficiency challenge fails.

"Where the intention of the actor is obvious from the act itself, the [fact-finder] is justified in assigning the intention that is suggested by the conduct." *Matthew*, 909 A.2d at 1259 (citation omitted). The evidence showed Scholl pointed the loaded gun at three police officers, redirecting it at each one individually. [5] Scholl kept his finger on the trigger of the gun

---

[5] Officer Shaffer testified: "The gun was sort of moving around in front of everybody's face as [Scholl] was attempting to struggle to keep hold of the weapon while Officer Chambers was trying to remove it from his hands." N.T., 3/24/2014, at 56. He further stated that the gun "came right across my face at least once[.]" *Id.* Sergeant Albright testified that Scholl pointed the gun at Officer Chambers and at himself. *Id.* at 89, 91, 96. Officer Chambers also testified that Scholl pointed the gun at him, "a foot from his face." *Id.* at 118.

and refused to disarm even though police ordered him to drop the weapon 25 or 30 times. N.T., 3/24/2014, at 64. The officers wrestled Scholl on the ground for approximately 30 seconds to a minute[6] before seizing the gun from him. The gun had one bullet in the clip or magazine.[7] This evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to support the jury's conclusion that Scholl had the intent to cause serious bodily harm to the officers, and that he took a substantial step towards inflicting serious bodily injury, as required by Section 2702(a)(1). Therefore, Scholl's first argument warrants no relief.

Scholl also challenges the sufficiency of the evidence to sustain his conviction for resisting arrest. A defendant may be convicted of resisting arrest if he, "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, ... creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S. § 5104. This statutory language "does not require the aggressive

_____

[6] N.T., 3/24/2014, at 57, 121.

[7] While we acknowledge Scholl's argument that no bullet was in the chamber of the gun, the magazine did contain one live round. Scholl indicated to police he had taken the pistol **and** put the magazine in it, thereby intentionally loading the weapon. **See** N.T., 3/24/2014, at 148, 162 (Commonwealth Exhibit 5), 223. Had Scholl operated the slide, chambering the round, he could have fired the gun. The actions of the police in placing their hands on the weapon prevented that from happening.

use of force such as a striking or kicking of the officer." ***Commonwealth v. McDonald***, 17 A.3d 1282, 1285 (Pa. Super. 2011) (quotations and citation omitted), *appeal denied*, 29 A.3d 372 (Pa. 2011).

We note, initially, that a lawful arrest is an element of resisting arrest, ***Commonwealth v. Jackson***, 924 A.2d 618, 620 (Pa. 2007), and that, in this case, police had probable cause to arrest based upon Scholl's actions when he confronted police. With regard to the remaining elements, Scholl claims he did not create a "substantial risk of bodily injury" to the officers or require "substantial force" to overcome. Scholl's Brief at 31.

We recognize that, in general, a "minor scuffle" is insufficient to support a charge of resisting arrest. ***Commonwealth v. Rainey***, 426 A.2d 1148, 1150 (Pa. Super. 1981). However, the evidence in this case showed more than a minor scuffle. Officer Shaffer testified that after the officers had wrested the gun from Scholl, Scholl continued to "actively resist" and he had to use a "shoulder lock." N.T., 3/24/2014, at 63. Officer Shaffer explained that Scholl was "wrestling trying to keep us from being able to get his hand … tensing up … keeping us from being able to get control of it … and we're just trying to wrench his hands to get them into a position where we can actually apply handcuffs at that point." ***Id.*** He further testified that Scholl "did not acquiesce to anything until we finally had a handcuff on one hand and had him rolled over and bellied out." ***Id.*** at 64. Sergeant Albright confirmed that Scholl "was actively resisting … even after Officer Chambers

got the firearm away[,]" and that "Officer Shaffer was the one who was actually able to arm bar [Scholl]." *Id.* at 106. Likewise, Officer Chambers also testified that after he took hold of the gun from Scholl and stood up, the struggle continued. *See id.* at 123. He estimated that after the gun was removed from Scholl, it took "maybe another 30 [seconds] to get him secured[.]" *Id.* at 121.

The statutory language of Section 5104 criminalizes resistance behavior that requires substantial force to surmount. Although Scholl cites Sergeant Albright's testimony that Scholl may have just been struggling in the limited space of the trailer to get his arms behind his back, and that had he truly felt Scholl was resisting arrest, he would have tasered him,[8] our standard of review requires that we view the evidence in the light most favorable to the Commonwealth as verdict winner. Here, we conclude that the evidence was sufficient for the jury to conclude that the officers had to employ substantial force to overcome Scholl's resistance, and to find him guilty of resisting arrest. *See Commonwealth v. Thompson*, 922 A.2d 926, 928 (Pa. Super. 2007) (appellant guilty of resisting arrest where she would not allow police officer to handcuff her and refused order to put her hands behind her back; officer's efforts to restrain her left him exhausted). Accordingly, this claim likewise fails.

---

[8] *See* Scholl's Brief at 31–32.

Nonetheless, it appears from the record that the trial court imposed a mandatory minimum sentence pursuant to 42 Pa.C.S. § 9712, a statute that has been found to be constitutionally infirm in light of the United States Supreme Court's decision in **Alleyne v. United States**, 133 S.Ct 2151 (U.S. 2013). **See Commonwealth v. Ferguson**, 107 A.3d 206 (Pa. Super. 2015); **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014). **Cf. Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*). Therefore, in an abundance of caution, we consider the issue of the mandatory minimum sentences imposed on the counts of aggravated assault, pursuant to Section 9712.[9]

Although Scholl did not contest the imposition of the mandatory minimum sentences on appeal, "a challenge to a sentence premised upon **Alleyne** … implicates the legality of the sentence and cannot be waived on

_____

[9] The trial court did not cite 42 Pa.C.S. § 9712 in its sentencing orders on the aggravated assault counts, but only stated that the court "finds that a deadly weapon was used." Orders (Count 1, Count 2, Count 3), dated 5/8/2014, filed 5/19/2014. However, the Commonwealth notified Scholl that he was subject to the mandatory minimum sentence of five years for the aggravated assault counts at Count 1, Count 2, and Count 3, pursuant to 42 Pa.C.S. § 9712. **See** Commonwealth's Notice of Mandatory Sentence Under 42 Pa.C.S. § 9712, 3/26/2014. Moreover, both Commonwealth counsel and trial counsel referenced the mandatory five-year sentences for Counts 1 through 3 in argument to the court at sentencing. **See** N.T., Sentencing, 4/29/2014, at 5, 10. Finally, we note that relevant, proposed sentencing guideline forms that were prepared for and included in the presentence investigation report reflect a mandatory minimum of 60 months and include citation to 42 Pa.C.S. § 9712. **See** Presentence Investigation Report, 6/4/2014.

appeal." ***Newman, supra***, 99 A.3d at 90. Moreover, this Court may address the legality of a defendant's sentence *sua sponte*. ***Commonwealth v. Watley***, 81 A.3d 108, 118 (Pa. Super. 2013) (*en banc*), *appeal denied*, 95 A.3d 277 (Pa. 2014).

In ***Alleyne v. United States***, 133 U.S. 2151 (2013), the United States Supreme Court held "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." ***Id.*** at 2155. Applying this mandate, this Court has held that ***Alleyne*** renders unconstitutional mandatory minimum sentencing statutes that permit the trial court to increase a defendant's minimum based upon a preponderance of the evidence, as opposed to utilizing the beyond a reasonable doubt standard. ***See Newman, supra*** (finding 42 Pa.C.S. § 9712.1 unconstitutional). ***See also Commonwealth v. Vargas***, 108 A.3d 858 (Pa. Super. 2014) (*en banc*) (applying ***Newman*** to 18 Pa.C.S. § 7508); ***Ferguson, supra*** (applying ***Newman*** to 42 Pa.C.S. § 9712); ***Commonwealth v. Bizzel***, 107 A.3d 102 (Pa. Super. 2014) (applying ***Newman*** to § 6317); ***Valentine, supra*** (applying ***Newman*** to 42 Pa.C.S. §§ 9712 and 9713).

While, in this case, the jury determined, *via* the verdict slip, the factual predicate under section 9712, this Court has found that by such efforts to comply with the dictates of ***Alleyne***, the courts perform "an impermissible legislative function." ***Commonwealth v. Mosley***, ___ A.3d ___, ___ [2015

- 13 -

PA Super 88] (Pa. Super. April 20, 2015); *Ferguson, supra; Valentine, supra*. Accordingly, we are constrained to vacate the judgment of sentence and remand for resentencing.[10]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/2/2015

---

[10] We note that application of the deadly weapon enhancement does not violate *Alleyne*. *See Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1269 n.10 (Pa. Super. 2014) (discussing deadly weapon enhancement), *appeal denied*, 104 A.3d 1 (Pa. 2014). *See also Commonwealth v. Ali*, 2015 PA Super 45 (Pa. Super. 2015) (discussing school zone enhancement).