McKEON, APPELLANT, *v.* KILDUFF, RESPONDENT.

(No. 6,494.)

(Submitted September 27, 1929. Decided October 16, 1929.)

[281 Pac. 345.]

564

 

 

*Mr. W. F. O'Leary* and *Mr. W. P. Costello,* for Appellant, submitted a brief; *Mr. O'Leary* argued the cause orally.

*Messrs. Slattery & Tighe,* for Respondent, submitted a brief; *Mr. John. L. Slattery* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by the plaintiff by reason of the defendant's negligence in operating an automobile on Third Street in the city of Great Falls. The defendant by answer denied the allegations of negligence contained in the plaintiff's complaint, and, in further defense pleaded the plaintiff's contributory negligence. The cause was regularly brought on for trial before a jury, and at the close of the plaintiff's case the defendant moved for a nonsuit which was granted. Judgment was thereupon entered upon the merits, dismissing the plaintiff's complaint, from which this appeal is prosecuted.

The plaintiff's specifications of error present two questions for determination, viz.: (1) Did the court err in granting the defendant's motion for a nonsuit? and (2) Was it proper to

enter a judgment on the merits? These questions will be considered and disposed of in their order.

1. The grounds upon which the defendant predicated his motion for a nonsuit were (1) failure of proof, and (2) that the evidence established the plaintiff's contributory negligence as a matter of law. It appears that the plaintiff, a single man, is a telegraph operator employed by the Great Northern Railroad in the city of Great Falls, and at the time of the accident was forty-nine years of age. On the night of November 26, 1927, he went off duty at about 10 minutes to 12. He was returning to his place of abode after his day's labors and walked on the south side of Central Avenue to the intersection of Third Street, at what is called "Lapeyre's corner," intending to board a street-car. He carried his lunch bucket and a small package of cereal, and wore a medium weight overcoat, the collar of which was not turned up, and there was nothing to obstruct his sight or hearing. At "Lapeyre's corner" he saw a street-car approach and stop, and was attempting to cross Third Street at about the hour of 12:10 A. M. when he was struck down in the street by an automobile driven by the defendant. He testified: "I didn't get on because it wasn't my car, it was an A. C. M. car that stopped at Lapeyres loading up, my car should have been right behind it, but it wasn't coming, and I didn't wait. I didn't wait at all because my car was not in sight; I figured on walking another block and to let the car overtake me. Before the time of this accident I wore glasses all the time while I was in the electric light, but not on the street. My vision was all right on the street, and there was nothing wrong with my hearing. I left Lapeyre's corner and started across toward the First National Bank; I looked to my left, I was watching to my left until I got to about the center; the street was well lighted and I could see north and south along Third Street for at least two or three hundred feet very clearly, and where I was walking was also well lighted so that I would be visible to persons that distance from me, or should have been. When I got to the center of the street I looked to my right, it was then and there that I

saw Mr. Kilduff approaching in his automobile; I was about sixteen or seventeen feet from the bank when I first saw him, that would be about the center of the street, it was probably about the center of the street on Third Street that I was when I first saw Mr. Kilduff. When I first saw him he was about fifty feet from me and I continued to look at him. I thought I had plenty of time to make it; I hastened my paces. Q. Now, you estimated right then and there that you had plenty of time to get across that street, didn't you? A. Absolutely. If the street at this particular point is fifty feet from curb to curb, I probably had to travel about twenty-five feet before reaching the curb. There were no parked cars to obstruct my view of Mr. Kilduff approaching in his car. * * * I had to watch this oncoming automobile in order to be able to judge the speed at which it was approaching. I watched it from about the neighborhood of the center of the street all the way across until, well, it would be about while I was taking four or five steps, possibly a couple of seconds; I was watching the car for a couple of seconds, and the first time I saw it it was only fifty feet from me, just about. In that couple of seconds I saw that it was approaching at the rate of thirty miles per hour. You may understand me to say that I decided that I could reach the curb before the car reached where I was to cross; I hastened my paces. I don't hardly think I had my face turned toward the car at the time I was struck because I was hastening my paces to get across. I was walking just about four miles per hour, but I was walking faster when I hastened my paces. I was then walking probably five or six miles per hour, just about. I can't say how close the automobile was to me when I took my eyes off of it, it was close because its headlights were large, his lights were well lighted; he wasn't more than a couple of feet from me at the time I took my eyes off of him. The sounding of a horn, whistle or gong might have made me more aware of his presence, in that he could have given me a warning further back. His horn would probably have been too late when he was about two feet from me even if he had blown

the horn, it would not have made me any more aware of his approach. I saw him anyway, but it might have helped me to judge his speed." The automobile driven by the defendant at the time of the accident was operated at a rate of speed considerably in excess of that permitted by the city ordinances at the place of the accident. After being struck by the oncoming automobile before it was stopped, he was by it pushed along in front of it about five feet from the curb alongside of the First National Bank building, until it was brought to a stop on Central Avenue about five feet from the street-car track. In the plaintiff's verified complaint he alleged "that at the time of the accident and immediately before, plaintiff did not see the car driven by the defendant, and did not know of the defendant's approach," and that the plaintiff "could not in the exercise of reasonable care or diligence have known that the defendant was approaching said crossing." On cross-examination the plaintiff was asked: "Q. Mr. McKeon, since you swore in your complaint that at the time of the said accident, and immediately before, you did not see the car driven by the defendant Kilduff, and that you did not know of his approach, and that you could not in the exercise of reasonable care or diligence have known that Mr. Kilduff was approaching the crossing, how do you explain your present testimony that when you were at the center of Third Street coming across you saw him at a distance of only fifty feet away? A. Well, I can't— Q. You can't explain that? A. I can't explain that." Before the court had made its ruling sustaining the defendant's motion for a nonsuit, the court offered to give the plaintiff's counsel opportunity to reopen the case should they so desire, to which they responded, "that is all the evidence we have."

Thus, on this appeal, the facts may be considered as admitted. The plaintiff has presented his case as strongly as is possible for him; and the decisive question is, whether the plaintiff was guilty of such contributory negligence as will preclude his right of recovery as a matter of law. If not, the

court was in error in granting a nonsuit, and the issues should have been submitted to the jury.

Section 1742 of the Revised Codes of 1921 provides that "Every person operating or driving a vehicle of any character on a public highway of this state shall drive the same in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under the conditions existing at the point of operation, taking into account, amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, condition of surface and freedom of obstruction to view ahead, and so as not to unduly or unreasonably endanger the life, limb, property or other rights of any person entitled to the use of the street or highway; provided, however, that cities and towns may, by ordinance, regulate speed and traffic upon the streets within the incorporated limits."

Pedestrians and automobilists have equal rights in the use of the highways, in the exercise of which pedestrians are required to use ordinary care for their own safety, and the driver of an automobile must operate the same in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under existing conditions as to traffic, road conditions and the requirements of city ordinances. (*Green* v. *Bohn*, 65 Mont. 399, 211 Pac. 320; Huddy on Automobiles, 8th ed., sec. 488; Berry on Automobiles, 4th ed., sec. 312; 2 R. C. L., p. 1186.)

The settled rule applicable is that where the question of contributory negligence is fairly disputed as to the facts, it must be resolved by a jury; but when the evidence is so clear and convincing that reasonable men of fair and unbiased minds cannot differ as to its effect, and therefrom it appears that the proximate cause of the injury was the plaintiff's contributory negligence, there is nothing for a jury to determine, and it becomes the duty of the court to decide the case as a matter of law, on motion for a nonsuit or for a directed verdict. (*Carey* v. *Guest*, 78 Mont. 415, 258 Pac. 236;

*Williams* v. *Hample*, 62 Mont. 594, 205 Pac. 829; *Neilson* v. *Missoula Creamery Co.*, 59 Mont. 270, 196 Pac. 357; *Zvanovich* v. *Gagnon & Co.*, 45 Mont. 180, 122 Pac. 272.) "In this jurisdiction it is the rule that contributory negligence is a matter of defense to be established by a preponderance of the evidence. It is the rule also that when the circumstances attending the injury, as detailed by the plaintiff's evidence, raise a presumption that he was not at the time in the exercise of due care, he has failed to make out a prima facie case for the jury. The burden is then upon him, and if he fails to introduce other evidence to remove the presumption, he is properly non-suited." (*George* v. *Northern Pacific Ry. Co.*, 59 Mont. 162, 196 Pac. 869, 870.)

However, a nonsuit or a directed verdict in favor of the ██ defendant in a personal injury case is proper only where the evidence is undisputed and susceptible of but one construction by reasonable men, and that in favor of the defendant, or where the evidence is in such condition that, if submitted to a jury and a verdict returned in favor of the plaintiff, it would become the duty of the court to set it aside. (*Day* v. *Kelly*, 50 Mont. 306, 146 Pac. 930; *Herzig* v. *Sandberg*, 54 Mont. 538, 172 Pac. 132; *Marsh* v. *Ayers*, 80 Mont. 401, 260 Pac. 702.)

██ Like issues of negligence and contributory negligence, that as to proximate cause is usually proper to be determined by the jury. (*Marsh* v. *Ayers*, supra.)

Since, in the case before us, two alternatives were presented ██ to the traveler upon the highway as modes of escape from collision with the approaching automobile, either of which might be chosen by an intelligent and prudent person, therefore the law will not hold him guilty of negligence in taking either course. It is a question for a jury. (*Peabody* v. *Northern Pac. Ry. Co.*, 80 Mont. 492, 261 Pac. 261; *Mullery* v. *Great Northern Ry. Co.*, 50 Mont. 408, 148 Pac. 323.)

Under the city ordinances of Great Falls, pedestrians are ██ given the right of way at regular street crossings; and within the district where the accident occurred no motor driven vehicle is permitted to travel more than fifteen miles per hour.

Here the plaintiff was utilizing the regular street crossing with ordinary care for his safety, but the defendant was driving along the street at a rate of thirty miles per hour in disregard of the ordinance. The plaintiff had a right to believe upon entering upon the crossing that the defendant or others driving along the street would not drive at excessive speed, and when by reason of defendant's negligence in driving his car as he did, the plaintiff in the center of the street was confronted with an emergency and in such position strove to reach the opposite side of the street ahead of the car, it cannot be said as a matter of law that he was guilty of such contributory negligence as to deny him right of recovery. The question of contributory negligence was, in our opinion, clearly a question for the jury, and the court was in error in granting a nonsuit. (*Potter* v. *Driver* (Cal. App.), 275 Pac. 526.)

2. A nonsuit should be granted only when the facts are clear and undisputed, and from them it is apparent that the plaintiff cannot recover as a matter of law. (*Nord* v. *Boston & Mont. etc. Min. Co.*, 30 Mont. 48, 75 Pac. 681.) The court will grant a nonsuit in cases where it would grant a new trial if a jury should bring in a verdict in favor of the plaintiff (*Garver* v. *Lynde*, 7 Mont. 108, 14 Pac. 697). And where the plaintiff's own evidence shows that he has no right of recovery in application of the law to the facts it is proper for the court to grant a nonsuit. (*Cummings* v. *Helena & Livingston S. & R. Co.*, 26 Mont. 434, 68 Pac. 852.) However, it is never proper for the court upon granting a nonsuit to enter a judgment on the merits, since nothing is determined except that the plaintiff has not proved his case as alleged. (15 Cal. Jur., p. 131.) A judgment of nonsuit is not, as a general rule, a judgment on the merits, and therefore it is no bar to another suit upon the same cause of action, and this applies even when the nonsuit is compulsory, as for want or insufficiency of the plaintiff's evidence. It "is like the blowing out of a candle which a man at his own pleasure lights again." (34 C. J., pp. 781, 782.)

For the reasons stated the judgment is reversed and the cause remanded to the district court of Cascade county for a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.