BARBARICH, Appellant, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILWAY CO. et al., Respondents.

(No. 6,899.)

(Submitted February 11, 1932. Decided March 22, 1932.)

[9 Pac. (2d) 797.]

2

*Mr. R. Lewis Brown,* for Appellant, submitted a brief and argued the cause orally.

4

*Messrs. Murphy & Whitlock,* for Respondent, submitted a brief; *Mr. W. L. Murphy* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In June, 1930, Wellington D. Rankin, Esq., commenced an action against the Chicago, Milwaukee, St. Paul & Pacific Railway Company to recover damages for injuries received by the plaintiff, Tony Barbarich, while in the employ of the defendant company. A demurrer was sustained to the complaint on the sole ground that causes of action were therein improperly united, and plaintiff was granted time within which to amend, but no amended complaint was filed.

Negotiations between Attorney Rankin and A. N. Whitlock, of counsel for the defendant company, finally resulted in an offer by the latter to pay $500 in full settlement. On or about November 4, 1930, plaintiff being present, Rankin called Whitlock on the long-distance telephone to inquire as to whether or not the defendant would not make a better offer; the reply was in the negative. Holding the connection, Rankin consulted with his client and was advised that Barbarich desired to go to Chicago to live with his brother and would accept the $500 if the company would also issue him a pass to Chicago. Rankin communicated the counter offer to Whitlock, who stated that he would recommend such a settlement to the claim department, and this promise was communicated by Rankin to his client and found to be satisfactory. The recommendation was made at once and promptly acted upon by the issuance of a draft for the money and the pass, which were duly delivered to Rankin on December 5, 1930. Barbarich had returned to his home in Butte, and Rankin promptly advised him that "your check and pass are here" and requested him to come to Helena and settle the matter. Receiving no reply, Rankin called upon his client on December 10 when he was advised that Barbarich had received a letter from his brother telling him to "stay where you are," and that, consequently, the settlement was off.

On December 8, without discharging his original attorney or notifying him of the intended action, Barbarich consulted R. Lewis Brown, Esq., of Butte, who, without knowledge of the action pending in Lewis and Clark county, commenced a similar action in Silver Bow county; the following day the plaintiff personally, without advising Rankin, his attorney of record, filed a praecipe here for the dismissal of the action "without prejudice," and on notice thereof the defendant filed its motion for dismissal of the action "upon the merits" on the ground that the parties had entered into an agreement to "settle and compromise" the action, and that the terms of the agreement had been "fully carried out by the defendant."

On a hearing had it was admitted that Rankin still repre-

sented the plaintiff and still held the draft and pass; the defendant offered to pay $500 in cash in lieu of the former, which offer was rejected. The court sustained defendant's motion and a judgment on the merits "with prejudice" was duly entered. Plaintiff has appealed from the judgment.

The question presented is as to whether or not the facts warrant the judgment, or, in other words, did the agreement, shown to have been made, extinguish plaintiff's cause of action for damages for personal injuries alleged to have been sustained?

Plaintiff contends that the facts show but an accord without satisfaction, which is ineffectual in so far as the motion is concerned; while the defendant asserts that there was a binding compromise agreement constituting a bar to the action.

The law favors the settlement of disputes out of court, either before or after an action is begun, and when the parties are shown to have made a valid settlement they will be held thereto, in the absence of fraud or mistake (*Norum* v. *Ohio Oil Co.*, 83 Mont. 353, 272 Pac. 534); this is especially true in tort actions (*Black* v. *Martin*, 88 Mont. 256, 292 Pac. 577, 580). Here the plaintiff made an offer of settlement which was accepted by the defendant, and he should be bound thereby; but having refused to settle, his agreement warrants the dismissal of his action only if the agreement effected the extinction of his cause of action.

While courts and text-writers attempt to distinguish between "compromise" and "accord," and between "compromise and settlement" and "accord and satisfaction," the distinctions drawn are generally found to be unsound in the light of the general rules applied. The term "compromise" usually carries the idea of a mutual yielding of opposing claims; the surrender of a claimed right and a like surrender of some counterclaim (Hunt on Accord and Satisfaction, sec. 76, p. 160; *Rankin* v. *Schofield*, 70 Ark. 83, 66 S. W. 197; *Gregg* v. *Weathersfield*, 55 Vt. 385); while an "accord" is the substitution of an agreement "between the party injuring and the party injured" in lieu of the original

obligation (see 1 R. C. L. 177); but the term "compromise" is often defined as "to compound," "to settle," "to accord" (12 C. J. 314, note c).

In 12 Corpus Juris, at page 315, it is said: "The distinction which is usually made between compromise and settlement, and accord and satisfaction, is that while an unexecuted accord does not afford a bar to the original cause of action, a valid compromise agreement, although executory, operates as a bar. Since, however, there are many cases of accord and satisfaction in which the promise of one or both of the parties is accepted as satisfaction and extinguishes the original demand, and conversely there are cases of compromise in which courts have stated broadly that the original cause of action is not barred until the compromise is executed, this distinction is of little practical value. Another distinction drawn * * * is that in the case of an accord and satisfaction the claim involved may be undisputed, while in the case of compromise the claim must be in dispute. This distinction is obviously invalidated by the fact that by the weight of authority an accord and satisfaction may be had as to unliquidated demands. As a matter of fact, in many cases there has been interchangeable use of the terms 'accord and satisfaction' and 'compromise and settlement.' "

In the foregoing quotation the agreement which, "although executory," is said to operate as a bar, is not a "compromise" but a "compromise agreement," wherein the new agreement or promise is accepted in satisfaction of the original obligation, while a mere "compromise," like an "accord," must be executed in order to be a bar. (Hunt on Accord and Satisfaction, p. 161.) Here again it is demonstrated that the distinctions drawn have little weight, for it is the intention of the parties that is controlling, and an accord, on which an agreement is reached to the effect that the injured party, will accept the *promise* of the injuring party, will extinguish the original claim or demand as effectively as will a compromise agreement. (1 C. J. 567; 1 R. C. L. 200.) In other words, the parties may either compromise by agreement to ac-

cept mutual promises, or may reach an accord by which a promise is accepted in satisfaction of the original obligation; thus again the distinction between a compromise agreement and accord and satisfaction is of little practical importance.

In an exhaustive note in 100 Am. St. Rep. (note c, at page 417), the manner in which the phrases "accord and satisfaction" and "compromise and settlement" are used interchangeably, as stated in the foregoing quotation from Corpus Juris, is exemplified thus: "The rule that causes of action for damages arising from the commission of torts can be compromised and settled by means of an accord and satisfaction seems to be universally admitted." (Citing cases.) "The damages arising from the commission of torts being generally of an unliquidated nature and almost invariably disputed, form an ideal subject matter for accord and satisfaction." (See, also, 1 R. C. L. 179, and Hunt on Accord and Satisfaction, 49.)

The author of the text in California Jurisprudence says that accord and satisfaction must be carefully distinguished from "compromise which is always based on a disputed claim"; he then quotes the above declaration that because the claims in personal injury cases are almost invariably *disputed* they are ideal subjects for an accord and satisfaction, and closes the paragraph with, "and it has been held in California that there may be satisfaction of a tort liability for personal injuries," citing *Urton* v. *Price*, 57 Cal. 270, to which reference will later be made. (1 Cal. Jur. 125.)

Our Codes do not employ the term "compromise" in the sense here used; while therein executors, administrators and guardians are authorized to "compromise" claims (secs. 10264 and 10418, Rev. Codes 1921), and a joint debtor is permitted to "compromise with a creditor" (sec. 9768), and provision is made for an "offer of compromise" in a pending action (sec. 9770), the only further reference to the term is found in the provision that "a written agreement of compromise or settlement" need not be under seal (sec. 10582). Such a written agreement of compromise and settlement of a

personal injury action is construed in *Black* v. *Martin,* above; but, as in that case there was a full "settlement" or "satisfaction" under the agreement, the mere designation of the agreement as a "compromise" was wholly immaterial. It is there pointed out that the intention of the parties is controlling, and, in discussion of the ancient rule with respect to the liability of joint tort-feasors, Mr. Chief Justice Callaway, speaking for the court, said: "A tendency to break away from this harsh doctrine, which disregards the intention of the parties, deters compromise, and fails to recognize the vital distinction between full and partial *satisfaction,* was not long in manifesting itself." (Italics ours.) The effect of the writing, considered as a "release," is also discussed in the opinion.

Under the Codes the only methods for the "extinction of obligations," other than by performance or its equivalent, are "accord and satisfaction, novation, and release." (Secs. 7456 to 7466.) An "obligation" is defined to be "a legal duty, by which a person is bound to do or not to do a certain thing." (Sec. 7394.) Such a definition includes the liability for actionable tortious conduct. (*Exchange Bank* v. *Ford,* 7 Colo. 314, 3 Pac. 449.)

The method of arriving at a compromise and settlement in this state would, therefore, seem to be by statutory "accord and satisfaction"; but the terms used in stating the statutory rules are of little moment, as it is the intention of the parties and the effect given by statute to their agreement which control.

An "accord" is defined as "an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled." (Sec. 7456, above.)

Counsel for the defendant contend that the statutory provision is not applicable here, as plaintiff's damages, if any, are unascertained and unascertainable except by trial. Our statute was adopted *verbatim* from California (sec. 1521, Cal. Civ. Code), where it has been in effect since 1874. In *B. & W. Engineering Co.* v. *Beam,* 23 Cal. App. 164, 137 Pac. 624, 626, the final clause of the statute was construed to mean

"which might be recovered upon the original obligation" and a more elaborate definition of "accord" given, and, commenting upon the opinion, the writer of the text from California Jurisprudence to which reference has heretofore been made, declares that "the definition given by the Civil Code appears to be broad enough to include obligations arising from tort as furnishing a basis for an accord and satisfaction." Although in the case of *Urton* v. *Price,* cited (decided in 1881), no reference was made to section 1521 of the California Civil Code, but a written agreement and payment thereunder by one tort-feasor and acceptance by the injured party was held to be an accord and satisfaction as to a joint tort-feasor, that section 1521, above, warrants an accord and satisfaction in extinction of a claim for damages for personal injuries is clearly recognized in *Silvers* v. *Grossman,* 183 Cal. 696, 192 Pac. 534.

The applicability of an identical statute to such a case is recognized in South Dakota. (*Carpenter* v. *Chicago etc. Ry. Co.,* 7 S. D. 584, 64 N. W. 1120.)

Under the above authorities, and in view of the fact that the legislature evidently intended that the foregoing statutory provisions should take care of all agreements for the extinction of obligations, it is reasonably clear that our statute does not so alter the common-law definition of an "accord" as to make it inapplicable to the conditions under consideration, and that the amount to which the agreeing party "is entitled" is the amount which might be recovered on the original obligation.

Our statute declares that "though the parties to an accord are bound to execute it, yet it does not extinguish the obligation until it is fully executed" (sec. 7457), but that the "acceptance by the creditor of the consideration of an accord extinguishes the obligation, and is called satisfaction" (sec. 7458). Under the provisions of section 7457, although the injured party might be compelled to specifically perform his contract, or might be liable in damages for its breach, the original obligation remains until the contract is executed by

a satisfaction thereof, unless the agreement is to accept the *promise* of a settlement in lieu of the original obligation. In such case, under the exception noted above, the consideration is the *promise* and the acceptance of the promise constitutes the satisfaction. (*Laughead* v. *H. C. Frick Coke Co.*, 209 Pa. 368, 103 Am. St. Rep. 1014, 58 Atl. 685; *Babcock* v. *Hawkins*, 23 Vt. 561; *Moers* v. *Moers*, 229 N. Y. 294, 14 A. L. R. 225, 128 N. E. 202; *Smith* v. *Elrod*, 122 Ala. 269, 24 South. 994.) In such a case the new promise is substituted for the old obligation and this exception is the basis for the decisions, relied upon by defendant, in the following cases: *Bandman* v. *Finn*, 185 N. Y. 508, 12 L. R. A. (n. s.) 1134, 78 N. E. 175; *Armstrong* v. *Sacramento Valley Realty Co.*, 179 Cal. 648, 178 Pac. 516; *Barr* v. *Gilmour*, 204 Ky. 582, 265 S. W. 6; *McNeil & Sons Co.* v. *United States*, (D. C.) 1 Fed. (2d) 39. Language used in the opinion in *Chicago etc. Ry. Co.* v. *Meurer*, 187 Ind. 405, 119 N. E. 714, supports defendant's contention here, but the question of a party agreeing and then "backing out," discussed, was not involved, as there was in that case a full satisfaction of the accord reached, or settlement of a compromise, by the payment of the amount agreed upon; the question there for decision was as to whether or not the settlement made included the alleged cause of action sought then to be enforced.

In the instant case the plaintiff did not make an offer of settlement on the basis of a *promise,* nor agree to dismiss the action if the defendant would promise to pay at some future time; he offered to accept $500 and a pass in extinction of his asserted claim for damages, which offer was transmitted by counsel, without acceptance or rejection, to defendant's claim department and was thereafter accepted by forwarding the draft and pass to plaintiff's attorney for acceptance by the plaintiff. The intention of the parties is clear; it was a payment of $500 and delivery of a pass that was agreed upon as a settlement.

The defendant, however, contends that, if acceptance of the tender was necessary to complete the settlement, accept-

ance was made by Rankin as the authorized attorney for plaintiff. There can be no doubt that Rankin had authority to make the agreement under consideration, or that, acting in good faith and in the best interest of his client, as he saw it, he did all in his power to consummate the settlement. Had the agreement included only the payment of money and had the amount agreed upon been tendered to Rankin, his acceptance would doubtless have constituted a satisfaction, as, under our statutes, an attorney has authority "to receive money claimed by his client in an action or proceeding * * * unless a revocation of his authority is filed; and upon the payment thereof, and not otherwise, to discharge the claim. * * *  " (Sec. 8974, Rev. Codes 1921.)

After accord, the *money* claimed by plaintiff was $500, but his full claim included transportation, and no *money* was tendered to nor accepted by Rankin. As to the $500, the tender was of a draft which was worthless unless the receipt and release thereto permanently affixed should be signed by the plaintiff personally.

Rankin has a lien upon his client's cause of action for his compensation (sec. 8993, Rev. Codes 1921), and it was proper that the tendered satisfaction was transmitted to him (*Bury* v. *Bury*, 69 Mont. 570, 223 Pac. 502) ; he had the authority or right to accept *payment* in accordance with the agreement (*Jeffries* v. *Insurance Co.*, 110 U. S. 306, 28 L. Ed. 156, 4 Sup. Ct. Rep. 8), but he could not render the transportation issued to his client effective, nor, while the retention of a check by the party to whom it is made payable may constitute satisfaction of an accord (*Sawyer* v. *Somers Lumber Co.*, 86 Mont. 169, 282 Pac. 852), could his retention of the draft constitute acceptance thereof, for he could neither sign the personal release thereto attached, nor indorse and cash the draft. The attorney is agent for his client, but an agent has no implied authority to accept payment in anything but money. (*United States Nat. Bank* v. *Shupak*, 54 Mont. 542, 172 Pac. 324.)

We are forced to the inevitable conclusion that the evidence shows but an accord without satisfaction which did not extinguish the original cause of action. In addition to the foregoing, see the following authorities: *Stanly* v. *Buser*, 105 Kan. 510, 10 A. L. R. 218, and note at page 222, 185 Pac. 39; *St. Louis Southwestern R. Co.* v. *Mitchell*, 115 Ark. 339, Ann. Cas. 1916E, 317, 171 S. W. 895; *Reilly* v. *Barrett*, 220 N. Y. 170, 115 N. E. 453; *Larscy* v. *T. Hogan & Sons*, 239 N. Y. 298, 146 N. E. 430; *Houston Bros.* v. *Wagner*, 28 Okl. 367, 114 Pac. 1106.

The court erred in sustaining defendant's motion to dismiss, and the judgment must be reversed.

The plaintiff assigns error on the court's refusal to dismiss ██ the action pursuant to his *praecipe* on file and motion made by attorney Brown at the hearing on defendant's motion. The defendant contends that plaintiff was not entitled to dismiss and that defendant is now entitled to a judgment on the merits because plaintiff did not further plead within the time allowed, contending that there has, in effect, been a trial and decision in the case.

It is true that defendant might have had plaintiff's default entered and secured a judgment of dismissal, but, as the demurrer was sustained only on the ground that causes of action had been improperly united in the complaint, it is doubtful if such a judgment would be "on the merits"; rather it would seem that the judgment, if entered, would not be a bar to another action. (2 Freeman on Judgments, 1567; *McKeon* v. *Kilduff*, 85 Mont. 562, 281 Pac. 345.) We are not, however, called upon to determine the effect of such a judgment; it has not been entered and the lapse of time alone does not bar the plaintiff from filing an amended complaint on the sustaining of a demurrer with leave to further plead.

Brown's name was not entered as counsel in this case; he but appeared in opposition to the motion to dismiss with prejudice, for the purpose of protecting the action pending in Silver Bow county; here Rankin still appears as the only attorney of record.

While section 9317, Revised Codes of 1921, authorizes a dismissal of an action at any time before trial "by the plaintiff himself," it is clear, when the statute is read in connection with other provisions, that this provision means by the plaintiff, acting through his counsel, unless he is appearing "in person" and without an attorney under the authority of section 8988. As shown above, the attorney has a lien on the cause of action which should preclude settlement and dismissal without his knowledge or consent, and section 8988, above, specifically declares that "if a party has an attorney in the action, he cannot appear or act in person where an attorney may appear or act." Rankin could have appeared and acted, as he had not been dismissed; if the action was to be dismissed, he and he alone was the proper person to ask for dismissal. The court did not err in refusing to dismiss without prejudice.

The judgment is reversed and the cause remanded to the district court of Lewis & Clark county, with directions to strike the order sustaining defendant's motion and enter an order overruling it.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.