SIMPSON, Respondent, *v.* MILLER, Appellant.

(No. 7,261.)

(Submitted June 2, 1934.   Decided June 29, 1934.)

[34 Pac. (2d) 528.]

330

*Mr. Leon L. Wheeler* and *Mr. Denzil R. Young,* for Appellant, submitted a brief; *Mr. Young* argued the cause orally.

*Mr. Thomas C. Colton, Mr. F. N. Hamman, Mr. A. G. Shone* and *Mr. H. Lowndes Maury,* for Respondent, submitted a brief; *Mr. Colton* and *Mr. Shone* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Walter Allen Simpson, a minor sixteen years of age, appearing by his guardian *ad litem*, Mary L. Simpson, instituted an action for damages for injuries inflicted upon him when his head was driven through the windshield of an automobile driven by one Sanford Myhre, as the result of a head-on collision with a car driven by the defendant, De Loss Miller.

The complaint filed alleges that the proximate cause of the injury received was the negligence of the defendant in driving his car around a street corner close to the curb on the defendant's left-hand side and to the left of a traffic post plainly marked "Keep to the Right" and into the Myhre car which was proceeding with due caution on the right-hand side of the street, near the curb.

The answer seeks to excuse defendant's negligence, and, as affirmative defenses, sets up three acts of contributory negligence as bars to a recovery: First, that Myhre negligently drove his car along a public highway for a number of miles "thru darkness and snowstorm" without lights, and was continuing to do so at the time of the collision; that he should have stopped at the first place where the lights could have been repaired; that defendant was unable to see the Myhre car because of the lack of lights, and that the plaintiff should have protested to Myhre against driving without lights, and, if necessary, have left the car, but did neither. Second, that defendant's car lights were on and the boys should have seen the light before he rounded the corner and should have observed his line of approach, and, warned of danger, should have driven further to the right, and, if necessary, across the sidewalk and into the adjoining filling station, but did not. Third, that at the moment of impact the plaintiff rose from his seat to satisfy his curiosity as to whether the bumpers of the two cars would touch, and the injury resulted from his own negligence in thus placing his head against the windshield,

whereas he would have suffered no injury had he remained in his seat.

By reply the plaintiff denied all new matter set out in the answer. The cause was tried to a jury. At the close of plaintiff's case the defendant moved for a nonsuit, and, at the close of the case, moved for an instructed verdict; both motions being denied. The trial resulted in a judgment of $5,000 for the injuries proved, and $200 expenses incurred in doctor and hospital treatment. The defendant moved for a new trial on various grounds, including that of the insufficiency of the evidence and the excessiveness of the verdict, alleged to have been given under the influence of passion and prejudice. The court ruled that, if within fifteen days the plaintiff would accept in writing a reduction of $1,200 from the judgment, the motion would be denied; otherwise the motion would be granted. The acceptance was duly filed, and the judgment reduced to $4,000. The defendant has appealed from the judgment.

The specifications of error raise the questions of the sufficiency of the evidence to warrant the verdict and judgment, of contributory negligence and its effect, of the correctness of the court's ruling in sustaining plaintiff's objection to one question, and in overruling defendant's objection to one question, and as to whether or not the court erred in refusing to give to the jury two instructions on contributory negligence, offered by the defendant, and, finally, error in refusing to grant a new trial.

The sufficiency of the evidence, challenged by motion for nonsuit and motion for new trial, is to be determined by an examination of the record to ascertain whether there is any substantial evidence to justify the verdict (*State* v. *Popa*, 56 Mont. 587, 185 Pac. 1114); if the verdict is based upon evidence which the jury could have accepted as credible, it is binding on this court (*Williams* v. *Thomas*, 58 Mont. 576, 194 Pac. 500); and the fact that this court might have made a different finding on the evidence is not sufficient to warrant disturbing a verdict which has been approved by the trial court

in denying a new trial (*Trogdon* v. *Hanson Sheep Co.*, 49 Mont. 1, 139 Pac. 792).

Applying the foregoing rules to the record, the following is a fair statement of the facts concerning the movements of the respective parties up to and including the time of the accident and what transpired immediately thereafter: On the evening of December 29, 1930, Simpson and Myhre left Baker for Ekalaka, merely for a "joy ride." The distance between the two towns is forty-two miles. About twelve miles out of Baker their headlights burned out; the boys walked to a farm-house a mile and a half distant, where they secured one bulb. The plaintiff suggested that they should stop at Willard, some miles further on, and there secure a second bulb, but were advised by a stranger, who gave them a ride back to their car, that bulbs for their car could not be secured at Willard. After installing the one bulb, the boys drove on to Ekalaka, but had proceeded but a mile or so when it burned out. They discussed their dilemma and agreed to proceed in the light of any car coming from either direction. Shortly a truck appeared traveling toward Ekalaka and Myhre drove ahead of it until they were within a radius of the street lights of Ekalaka, when he pulled away from the truck, deeming its light no longer necessary to their progress.

The Baker-Ekalaka highway on which the car was proceeding passes through the heart of the business section of the latter town and is intersected by the main street. Just before reaching this intersection, the boys could have pulled into a filling station, but whether or not they could have secured light bulbs there is not disclosed; they did not stop but drove slowly up the street near the curb on their right-hand side until they reached a point ten to fifteen feet from the corner at which stood a street light and with the lighted filling station on their right.

The defendant turned into the highway from the main street, driving to his extreme left and passing within a foot of the lamp-post and traveling at from thirty to thirty-five miles an hour, and met the Myhre car head-on on the side of the street

reserved for cars going in the opposite direction. It is said that the street is eighty feet in width, and, had the defendant obeyed the injunction on the traffic post to "Keep to the Right," he would have been at least half that distance from the Myhre car when he straightened out on the highway. As the defendant rounded the corner, he saw the Myhre car and set his brakes, and as a result of this action the crash was not severe. The windshield on the Myhre car was broken and glass therefrom cut a gash from the point of plaintiff's cheek-bone to the bridge of his nose and back to the corner of his eye; this gash went to the bone, "the flap laid back in the direction of his right ear." Plaintiff also received a cut a third of an inch long across his eyeball; the eyeball was punctured so that the "eyeball substance" protruded.

It is conceded that the proof of negligence and resulting injury is sufficient, but the defendant contends that the showing of contributory negligence as the proximate cause of the injury was sufficient to entitle him to a judgment of nonsuit or a directed verdict.

First it is asserted that the boys should have returned to Baker when their lights failed, and, not having done so, should have stopped at the first place where light bulbs were procurable and they should have tried to procure them at Willard. The defendant did not attempt to prove that such bulbs could have been procured at Willard or that there was any place between Baker and Ekalaka where bulbs could have been purchased or the car repaired if more than new bulbs were needed. The fact that the one bulb procured burned out within a very short time would indicate that something more than bulbs was necessary.

In this connection defendant predicates error on the admission, over objection, of the statement by the plaintiff as a part of his narration of what took place on the trip, that "I mentioned to Sanford that we ought to stop at Willard and try to get one of these bulbs, and one of these men * * * said that we couldn't get bulbs at Willard to fit this car." This statement is hearsay but in

the nature of a part of the *res gestae*. Further, if Myhre was negligent in traveling without lights prior to reaching Ekalaka, it was nonactionable negligence, as it cannot have been said to have been the proximate cause of the accident or to have contributed thereto.

When a guest or passenger is injured in a collision and contributory negligence is asserted, he is to be judged by the duty that the law imposes upon him "under the circumstances existing at the time of the accident." (Berry on Automobiles, 6th ed., sec. 624.) "At the time of the accident" in the present case, the Myhre car was still without headlights, but it was on a lighted street and had come to a stop before it was struck. While snow was falling, vision was not obstructed. A witness testified that he could see both cars plainly before the accident at a distance of eighty-five feet; indeed, the defendant's testimony clearly indicates that he saw the car as soon as he turned the corner, but it was then but ten to fifteen feet away.

The defendant having testified that his windshield was clear and that "as I turned the corner, well I got the car straightened out—I see this Myhre car looming up in front of me, it wasn't over fifteen feet," that he set his brakes and was not going over fifteen miles per hour "at the time we came together," he was asked, "Did the other car have lights?" to which he answered "No," and was then asked, "If it had had lights, would you have seen it?" To this question an objection was interposed that it called for a conclusion of the witness, which objection was sustained. Error is predicated on the exclusion of the answer, and it is here contended that the defendant was not permitted to develop the fact that, had the car had lights, he would have seen them before reaching the corner and acted accordingly.

The question had nothing to do with the last-contended situation, but had reference to what he might have seen after he got his car straightened out; it did call for a conclusion, was argumentative, and was superfluous, as he had just said he did see the car. Had the defendant desired to show that

the lights of a lighted car would have cast their beams out past the corner and would have been visible to one traveling on the main street and would thus have furnished a warning in spite of the street lamp on the corner, he doubtless would have been permitted to do so. After the accident, the defendant drove to Baker and advised plaintiff's father thereof, and said, "I cut the corner, * * * I cut it short because I was in a hurry."

One of the two offered instructions on contributory negligence which the court refused to give was in effect a peremptory instruction for the defendant, and was properly refused, unless "the evidence is so clear and convincing that reasonable men of fair and unbiased minds cannot differ as to its effect, and therefrom it appears that the proximate cause of the injury was the plaintiff's contributory negligence." (*McKeon* v. *Kilduff*, 85 Mont. 562, 281 Pac. 345, 347.) The other offered instruction would have advised the jury that, if Myhre was negligent in driving without lights, and that negligence "contributed to plaintiff's injury as a proximate cause," then, if the plaintiff knew of that negligence, it was his duty in the exercise of ordinary care to "protest against such negligence, and, if necessary, to leave the car, and if plaintiff failed in this requirement, he was guilty of contributory negligence which would bar recovery."

On this phase of the case the court gave an instruction which is much more favorable to the defendant than is the offered instruction, to-wit: "Since the evidence shows without dispute that the car in which Myhre and plaintiff were driving did not display the lights required by law, and the time at which the accident occurred was within the period in which lights are required by law, plaintiff was guilty of negligence, as a matter of law, in continuing to ride in the Myhre car under these conditions. Therefore, * * * if you find, from a fair preponderance of the evidence, that the absence of lights on the Myhre car contributed to the injury, then your verdict must be for the defendant." This instruction does not correctly state the law as to the liability

or duty of a guest riding with the driver of a car, as declared by this court (*Grant* v. *Chicago, M. & St. P. Ry. Co.*, 78 Mont. 97, 252 Pac. 382), but rather that of those "engaged in a joint enterprise" (*Martin* v. *Puget Sound Elec. Ry.*, 136 Wash. 663, 241 Pac. 360, 362), in that it imputes to the plaintiff the negligence of the driver with whom he is riding. However, whether right or wrong, it became the law of the case.

The two instructions, manifestly offered by the defendant, were conflicting, and it cannot be said that the court committed error against the defendant in refusing the one which placed the lesser burden upon the plaintiff and giving the other which warranted a verdict for the defendant just as though the plaintiff had been the driver of the car in which he was injured, if the jury should have found that the negligence described "contributed to the injury." We will then consider the facts, and the law applicable, as though the plaintiff was the owner and driver of the Myhre car.

Every motor vehicle operated or driven on the highways, must "between one hour after sunset and one hour before sunrise * * * display two white lights in front," etc. (Sec. 1753, Rev. Codes 1921.) A violation of the statute constitutes negligence, but, in considering whether or not such negligence contributed to the accident or barred recovery, we must take into consideration the conditions existing at the time and place of the accident. (*Knott* v. *Pepper*, 74 Mont. 236, 239 Pac. 1037.) The mere fact that a vehicle is on the road without lights, contrary to the requirements of the law, does not excuse the driver of another vehicle from the effect of running into it if the road is so lighted that it was clearly visible and he could have avoided the collision by the exercise of ordinary care; whether or not these facts exist is a question for the jury. (*Decou* v. *Dexheimer*, (N. J. Sup.) 73 Atl. 49.)

Herein, instructed that the plaintiff was negligent and that they should find for the defendant if they found from a preponderance of the evidence that such negligence

contributed to his injury, the jury found for the plaintiff, and there is substantial evidence in the record that the Myhre car was plainly visible from a much greater distance than the corner from which the defendant saw it; it was practically under a street light. Further, the car was traveling slowly on the extreme right of the street, it was at a standstill at the time it was struck, and, considering the short distance traveled after the defendant turned the corner, it must have been almost at a standstill when the defendant first saw it. At the time of the accident, the right front wheel of the Myhre car was not to exceed two and a half feet from the curb; according to plaintiff's statement, the tire was touching the curb. Practically the car was parked. In the circumstances, no reasonable person would apprehend, in the split second that elapsed between the time when the defendant "cut the corner" and the impact, that the defendant would pull to the extreme wrong side of an eighty-foot highway, or feel impelled to do more than park his unlighted car at the curb to his right. It would seem that the natural expectation would be that the defendant, being "in a hurry" when he cut the corner, would have proceeded diagonally across the highway to his proper side thereof rather than cramping his car to the left.

The evidence, therefore, warrants the implied finding that the fact that the car was not carrying headlights did not contribute to the injury, and that the plaintiff was not guilty of contributory negligence in failing to drive the car off of the street or to himself leave the car in order to avoid injury. As well might a pedestrian be presumed to expect that a motorist would suddenly drive his car across the curb and onto the sidewalk and consequently be held guilty of contributory negligence in failing to avoid being struck by entering an adjacent building.

Finally it is contended that the proximate cause of plaintiff's injury was his negligent act in leaning forward against the windshield at the moment of impact. The defendant testi-

fied that, after the accident, the boy said to him: "I leaned forward against the windshield to see if the bumpers was going to hit." However, the plaintiff denied making the statement and denied that he leaned forward. Myhre, the only other witness on the subject, testified that he believed that the plaintiff "leaned forward a little bit, * * * he leaned up in his seat to look out the windshield." These statements created a conflict in the evidence on the point; it was resolved by the jury in favor of the plaintiff and its finding cannot be disturbed. The record does not disclose contributory negligence barring recovery.

As noted above, one of the grounds of motion for a new ██ ██ trial was excessive damages indicating passion and prejudice. It is contended here that this vice was not cured by the reduction of the judgment to $3,800 for the injury and $200 expended in doctor and hospital bills.

As to the extent of the injuries suffered by the plaintiff, a boy sixteen years of age: He received permanent injuries, according to his attending physician, in that his eye is defective, testing "20–30" as compared with a normal eye rated at 20–20. The iris is scarred, which prevents normal contraction of the pupil, which, in turn, lets in more light than is good for the eye; in the course of years the defect in this eye may weaken the other, and will always cause pain. The lower lid was lacerated so that it gapped open and still continued in that condition. The cut on the cheek, requiring eight stitches, injured the lachrymal duct, leaving a stricture so that in excessive light or on excessive use tears flow down over the cheek. Dr. E. H. Rowan, an eye specialist of Miles City, agreed that the defect in the eye is permanent; he testified that the impairment is "a little worse than 20–30," or from 15 to 20 per cent. impairment of the vision, but could see no danger of further impairment or sympathetic impairment of the other eye.

The question of the justness and reasonableness of the award in this class of cases, wherein there is, and can be, no rule by which the amount which will compensate the injured party

for the detriment suffered can be definitely ascertained, is always difficult of solution. It presents an appeal to the judgment or conscience of those temporarily occupying judicial position rather than presenting a question of law. Whatever may be the individual feeling of the man on the trial bench or each of those composing the appellate court, by the Constitution and the statutes all questions of fact are to be decided by the jury (sec. 10698, Rev. Codes 1921), and in this class of cases, where the amount of compensation cannot be arrived at by mere calculation, the determination rests in the sound discretion of the jury (17 C. J. 1058 and cases cited). The jury having returned its verdict, the trial court cannot substitute the judgment of a single man for that of the twelve men designated by law to determine the amount by reducing the award. (*Burns* v. *Eminger*, 84 Mont. 397, 276 Pac. 437.)

The most that the trial court is empowered by law to do, in the event the award is excessive, is to grant a new trial for "excessive damages, appearing to have been given under the influence of passion or prejudice" (sec. 9397, Rev. Codes 1921), on the ground that the jury thus abused its discretion, but the verdict of the jury is conclusive unless it is such as to shock the conscience and understanding. (*Autio* v. *Miller*, 92 Mont. 150, 11 Pac. (2d) 1039; *Sullivan* v. *City of Butte*, 87 Mont. 98, 285 Pac. 184.) Where, however, juries in assessing damages in personal injury cases, indulge in reckless prodigality in spending other people's money, it is the duty of the trial judge to correct the injustice by granting a new trial. (*Morris* v. *Standard Oil Co.*, 188 Cal. 468, 205 Pac. 1073.)

In order to prevent further injustice in such cases, our courts, both trial and appellate, in common with those of other jurisdictions, resort to the expedient, when convinced that the verdict is so excessive as to be outrageous and shocking to the conscience of just men, of ordering that a new trial be granted unless the plaintiff shall consent to a

scaling of the award to meet with what the court considers just and reasonable. Where the trial court has failed to take such action, this court has not hesitated to order a new trial unless the plaintiff shall remit the excess, when the court has been convinced that the award was shockingly excessive. (*Wise* v. *Stagg,* 94 Mont. 321, 22 Pac. (2d) 308; *Tanner* v. *Smith,* ante, p. 229, 33 Pac. (2d) 547.)

In *McCabe* v. *City of Butte,* 46 Mont. 65, 125 Pac. 133, where the plaintiff suffered permanent injury, this court reduced the judgment from $10,000 to $3,000, which the plaintiff was required to accept or submit to a new trial, and, under similar fact conditions, declared a verdict of $5,000 "dangerously near to being excessive," and that, had the trial court reduced the award to $3,000, the court would have no hesitancy in affirming its action. (*Mullins* v. *City of Butte,* 93 Mont. 601, 20 Pac. (2d) 626.) The practice in the district courts is to be commended. "Juries must be made to understand that an excessive verdict is really prejudicial to the plaintiff in the action, resulting in delays and in new trials, involving unnecessary loss of time and additional and useless expense." (*Zion* v. *Southern Pac. Ry. Co.,* (C. C.) 67 Fed. 500, 507.)

Here the trial court has acted. Presumably exercising its best judgment as to what amount would fully compensate the plaintiff, it reduced the judgment for the injury suffered from $5,000 to $3,800, and, while we feel that the judge might properly have reduced the award to $2,500 or $3,000, and, had no reduction been made, we might go further than did the trial court, the amount of the judgment as it now stands is "not so excessive that the court can be charged with error in allowing it to stand" at that amount. (*Hitz* v. *Pittsburgh & B. St. Ry. Co.,* 245 Pa. 7, 91 Atl. 215.) Where the trial court, having had the superior advantage of seeing the plaintiff and judging the extent of his injuries, has asserted its authority to correct injustice, we must assume that the reduction meets the demands of justice, and it can

be only in exceptional cases that a further reduction would be justified.

Judgment affirmed.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.