## Laughead, Appellant, *v.* H. C. Frick Coke Company.

*Accord and satisfaction—Payment—Release—Receipt.*

Where an accord is founded upon a new consideration and is accepted as satisfaction it operates as such and bars the remedy on the old contract. There is an obvious distinction between an engagement to accept a promise in satisfaction and an agreement requiring performance of the promise. If the promise itself and not its performance is accepted, in satisfaction, this is a good accord and satisfaction without performance.

The accord is sufficiently executed when all is done, which the party agrees to accept in satisfaction of the pre-existing obligation. This is ordinarily a matter of intention, and should be evidenced by some express agreement to that effect, or by some unequivocal act evidencing such a purpose. This may be done by surrender of the former securities, by release or receipt in full, or in any other mode. All that is requisite is, that the debtor should have executed the new contract to that point whence it was to operate as satisfaction of the pre-existing liability, in the present tense.

Where a person gives to a corporation a receipt in full for unliquidated damages upon a disputed claim, and accepts at the time a certain amount of cash and a promise from the corporation's general manager to give him a salaried position in another company when a certain contingency should happen, the transaction is a complete accord and satisfaction and the person giving the receipt cannot recover upon his original contract.

Argued May 9, 1904. Appeal, No. 97, Jan. T., 1903, by plaintiff, from order of C. P. Fayette Co., March T., 1900, No. 211, refusing to take off nonsuit, in case of Walker W. Laughead v. H. C. Frick Coke Company. Before FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit for services. Before UMBEL, J.
The facts appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Error assigned* was refusal to take off nonsuit.

*D. M. Hertzog,* with him *Edward Campbell* and *Robinson & McKean,* for appellant.—There are two essential elements in the transactions: (1) an agreement to do something or an accord, and (2) the execution of that agreement or performance of what was agreed to be done, which performance operates as the satisfaction. Until both parts of the new transaction are complete in all respects there is no satisfaction of the original claim and suit thereon is not barred: Spruneberger v. Dentler, 4 Watts, 126; Hearn v. Kiehl, 38 Pa. 147; Hosler v. Hursh, 151 Pa. 415; Hart v. Boller, 15 S. & R. 162.

A receipt is always open to explanation: Nichols v. Nichols, 133 Pa. 438.

*Nath'l Ewing,* with him *George D. Howell,* for appellee.—This claim being disputed, and the promised employment being the obligation of a third party, and the agreed sum having been paid by the defendant and accepted by the plaintiff and a receipt in full of the claim given, that receipt is conclusive and impeachable only for fraud, accident or mistake: Keim v. Kaufman, 15 Pa. C. C. Rep. 541; McClymonds v. Stewart, 2 Pa. Superior Ct. 310.

OPINION BY MR. JUSTICE THOMPSON, May 25, 1904:

Accord and satisfaction and a receipt in full given by appellant to appellee in settlement of a disputed claim for unliquidated damages, it was contended by appellee, were a bar to appellant's right to recover and were the principal grounds upon which the learned trial judge based his reasons for a compulsory nonsuit.

In the early part of 1894, appellant, who in July, 1894, was in the employment of the appellee, as a superintendent of the Oliphant furnace, met Thomas Lynch, its general manager, and spoke to him in regard to some negotiations for the purchase of certain coal lands on behalf of appellee. These negotiations had been previously begun by it. The general man-

ager suggested that if appellant "would turn in to make the purchase for them" that appellee would "pay him for his services" and "would in the future gladly do anything for him." Appellant stated that he thought that he could make the purchase for $187,000, and began negotiations with the owners with a view to accomplishing that result. Subsequently on May 14, 1894, the general manager wrote appellant, authorizing him to make the purchase at the price of $850 per acre, or an aggregate price of $185,000. Accordingly in pursuance of this authorization, he procured the owners of the property to enter into an agreement for its sale for $187,000 and the purchase of the property was consummated. By virtue of it a deed was executed August 16, 1894, to a nominal purchaser who subsequently made a conveyance to appellee. Up to the date of the purchase no specific compensation had been stipulated to be paid to appellant by appellee for his services, but in December, 1894, appellee's general manager, being at the Oliphant furnace, said to appellant, "We have never paid you for buying the Brownfield coal; we want to pay you. We think you ought to be paid. What do you think would be a fair price?" Appellant replied, "What do you think would be a fair price?" and added that he would think the matter over and see him later upon the subject. A few days after this interview he received from appellee a check for $300 and a voucher for the same. Appellant having declined to accept this, it was then proposed to arbitrate the matter of compensation, and an arbitrator was agreed upon, but he declined to act. Some three or four weeks later the manager was again at the Oliphant furnace and said to appellant, that he could add another $100 and that he had a check and voucher for the same. Appellant asked him if he intended to give him a position and added, "If you give me the position and $500 in money, we will not say anything further about it."

The position referred to was a position in the employment of the Union Supply Company, the duties of which were the purchase of cattle. That company was a company distinct from appellee, but of which appellee's general manager was an official. A day or two after this interview, the occupant of the position referred to died, and Mr. Lynch stated to appellant that he could have it but that he could not get it until certain

questions in regard to mining rights were settled and until then the temporary occupant would continue to occupy it. Subsequently appellee having agreed to appellant's proposition sent him a check and a voucher.  He collected the $500 and returned to appellee the voucher receipting in full of all claims for services.  It clearly appears that he made the settlement upon Mr. Lynch's promise to give him the position.  He knew that it was filled.  When asked the question whether he expected to get the position before the mining rights were settled he stated that he did not know.  He further testified that the settlement was made in February, 1895, and he expected to get the position either in May or the first of June following. That he was led to believe that whenever the mining rights were settled the position would become vacant and he would be employed to fill it.  He thus rested upon the promise of Mr. Lynch to obtain the position at a future day and continued to do so until 1897, when he called upon him and inquired what he expected to do about it and received the reply, " As soon as the place is vacant I will let you have it," and in 1900 the present suit was brought.

The proofs show that he agreed to settle his claim against the appellees for the sum of $500 and the promise of the position indicated by the Union Supply Company, the employment to commence when a vacancy in the position should occur, but that such vacancy was to be dependent upon a settlement of matters growing out of certain mining rights in which the then occupant was interested.  It does not appear that the contingency upon which such vacancy was to arise has yet occurred. Appellant accepted the promise and received the $500 in question and having received the same, he receipted in full for services.  The accord and satisfaction thereby became complete and the appellant cannot recover upon his original contract.

In Hosler v. Hursh, 151 Pa. 415, Mr. Justice STERRETT says : " It is no doubt true, as was held in Babcock v. Hawkins, 23 Vermont, 561, cited by the learned president of the common pleas, that where the accord is founded upon a new consideration and is accepted as satisfaction, it operates as such, and bars the remedy on the old contract.  There is an obvious distinction between an engagement to accept a promise in sat-

isfaction and an agreement requiring performance of the promise. If the promise itself and not its performance is accepted, in satisfaction, this is a good accord and satisfaction without performance."

In the case referred to, Babcock v. Hawkins, 23 Vermont, 561, it is said : " The accord is sufficiently executed when all is done, which the party agrees to accept in satisfaction of the pre-existing obligation. This is ordinarily a matter of intention, and should be evidenced by some express agreement to that effect, or by some unequivocal act evidencing such a purpose. This may be done by surrender of the former securities, by release or receipt in full, or in any other mode. All that is requisite is, that the debtor should have executed the new contract to that point whence it was to operate as satisfaction of the pre-existing liability, in the present tense."

The receipt in the present case was in full and was a receipt for unliquidated damages upon a disputed claim and as such became final and conclusive because not successfully impeached upon the ground of fraud, accident or mistake. If standing alone unimpeached, it became a bar to appellant's recovery, it certainly cannot cease to be so operative, because in addition thereto and in connection therewith he accepted from another company, distinct from appellee, a promise of a certain position in that company's employment. In the case of Flynn v. Hurlock, 194 Pa. 462, it is held :

" Where a receipt is given ' in full of all demands ' because the debtor refused to pay any more money without it, the creditor must be assumed to have received the money upon the express condition that it was in full of all demands, and he is concluded by it, notwithstanding his assertion at the time, that he ' waived no rights.' "

In view of the above conclusion it is unnecessary to discuss the question whether the tender of the $500 was a necessary condition to be performed before suit could be brought by appellant.

The assignment of error is not sustained and the judgment is affirmed.