Carlisle Trust Company, Appellant, *v.* Myers et ux.

Argued March 12, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

·*E. M. Biddle, Jr.*, with him *C. A. Shambaugh*, for appellant.

*Addison M. Bowman*, of *Bowman & Bowman*, with him *Merrill F. Hummel*, for appellees.

OPINION BY BALDRIGE, J., April 16, 1936:

The plaintiff obtained a judgment under a sci. fa. sur mortgage for but a part of the amount claimed to be due. It appealed.

The facts were not in dispute. On June 24, 1927, the defendants executed four bonds, each in the sum of $1,000, secured by a mortgage given to Harry M. Leidigh, Esq., as trustee for the holders of the bonds. Three of these bonds were assigned to three Hemminger brothers. Leidigh became involved in serious financial difficulties. In June, 1933, the Carlisle Trust Company was appointed trustee of this $4,000 mortgage in place of Leidigh.

The Hemmingers, who were victims of Leidigh's peculations, became alarmed over the safety of their investment in these overdue bonds and called on Myers and demanded payment. Myers informed them that he was unable to comply with their request, but, after some discussion, told them he had $3,000 Associated Gas & Electric bonds (hereinafter referred to as utility

bonds) which he would be willing to give in payment of the mortgage bonds. Upon inquiry, the Hemmingers learned that the proffered bonds had a market value of but 19 per cent of the face value, but, after consideration and against the advice of their attorney, they told Myers they would accept $2,000 of the utility bonds in payment of two of the mortgage bonds, and an agreement to that effect was drawn and signed May 8, 1933. The utility bonds carried a lower rate of interest than the mortgage bonds, which was adjusted and Myers paid the difference, but he was unable to make immediate delivery of them as he was purchasing them by making periodical payments and there was a balance unpaid. Shortly thereafter, Myers, having finished his payments, had possession of the utility bonds, aggregating $3,000 par value. They were in several denominations and all were registered in Myers' name but one in the sum of $200, which was registered in the names of W. Klink Myers and Emma P. Myers, his wife.

On June 1, 1933, the parties met in an attorney's office and it was mutually agreed that the Hemmingers would take $3,000 instead of $2,000 utility bonds. A receipt, under seal, was accordingly written on each of the mortgage bonds and signed by two of the Hemmingers, individually, and as executors of a brother who had in the meantime died, acknowledging payment of the principal and interest due thereon to the first of June, 1933. These bonds were delivered by the Hemmingers to Myers, who, in turn, delivered to them the utility bonds. This transaction shows that there was a clear offer and unqualified acceptance, no facts concealed, no bad faith or false representations. The Hemmingers knew exactly what they were getting. They divested themselves completely of all dominion over the mortgage bonds and acquired entire control of the utility bonds. At this meeting something was said about having Mrs. Myers sign the $200 bond, but the

Hemmingers said, "There is no hurry about having it signed ...... We will put them in the bank, and any time it suits you people, all right." Mrs. Myers never executed an assignment of this bond, nor did the Hemmingers ever make a request or demand that she do so.

Later, the Hemmingers called on Myers and offered him the utility bonds and asked return of the mortgage bonds, which request was refused. On July 8, 1933, the attorney for the Hemmingers wrote Myers' attorney, stating, "Under the circumstances of the assignment, my clients desire to repudiate their assignment and demand return of the bonds assigned to Mr. Myers. The bonds taken by my clients are in my possession and will be surrendered to you or Mr. Myers upon return of the mortgage bonds." This offer was rejected and a sci. fa. issued.

The learned court below, in a very fair charge to which no exceptions were taken, submitted to the jury for their determination the question whether it was the intention of the parties that the Hemmingers were to take the utility bonds as they were—without Mrs. Myers' signature, in payment of the three mortgage bonds. The jury by their verdict found that that was the intention. The acceptance and retention of the utility bonds by the Hemmingers, their surrender of the mortgage bonds with a receipt of payment thereon, and their omission to base the attempted repudiation on the failure of Mrs. Myers to attach her signature to the $200 bond, were weighty reasons for the jury's finding: Flaccus v. Wood, Exrx., 260 Pa. 161, 103 A. 549; Clark v. Spheen et al., 271 Pa. 91, 114 A. 496; Blaisdell F. Co. v. Bayard & Co., 311 Pa. 6, 166 A. 234; Stroh v. Holmes, 83 Pa. Superior Ct. 129. The promise to obtain the wife's signature, not being a condition precedent, had no bearing on the validity of the completed contract. "If the promise itself and not its performance is accepted in satisfaction, this is a good

accord and satisfaction without performance:" Hosler v. Hursh et al., 151 Pa. 415, 423, 25 A. 52; Laughead v. Frick Coke Co., 209 Pa. 368, 58 A. 685; Meaker Galvanizing Co. v. McInnes & Co., Inc., 272 Pa. 561, 116 A. 400.

It further appears that there was no offer by the Hemmingers to return the sum of money Myers paid them in the adjustment of interest. It was their duty, if they desired to attempt a rescission of the contract, to give notice with reasonable promptness and to tender a return of not a part but all the property or security which was the subject-matter of the contract: Cornelius v. The Bank, 15 Pa. Superior Ct. 82; Wright v. Bristol Patent Leather Co., 257 Pa. 552, 101 A. 844; Restatement, Contracts §400 (1) (b).

We think it is unnecessary to discuss the question whether Myers had authority to act as agent for his wife. What we have heretofore said is controlling in this case.

Judgment is affirmed.