**AMERICAN EMPIRE INSURANCE CO., Plaintiff,**

v.

**The HANOVER NATIONAL BANK OF WILKES–BARRE, Defendants.**

Civ. No. 75–181.

United States District Court, M. D. Pennsylvania.

March 9, 1976.

---

Anthony J. Piazza, John R. Lenahan, Lenahan, Dempsey & Murphy, Scranton, Pa., for plaintiff.

Albert H. Aston, Sr., Albert H. Aston, Jr., Wilkes-Barre, Pa., for defendants.

## OPINION

MUIR, District Judge.

The protagonists in this case are the C. G. Grant Construction Corporation

(Grant), the Hanover National Bank of Wilkes-Barre, Pennsylvania (Bank), its President, Russell Gardner, the American Empire Insurance Company and its agent, Morton F. Hulse.

On October 15, 1973, Grant was substantially indebted to the Bank in connection with the financing of various construction projects. On or about October 17, 1973, Grant's President and Morton F. Hulse, acting at that particular time as an agent of the Wisconsin Surety Company, met with Gardner. Grant had been awarded a construction contract by the Swoyersville Municipal Authority and Hulse had undertaken the acquisition of performance and payment bonds for Grant to cover that contract. Gardner was informed that Wisconsin Surety would write those bonds if the Bank issued Letters of Credit in the total amount of $100,000 until such time as the surety company could complete its underwriting investigation. A form Letter of Credit to be used for this purpose was presented to Gardner by Hulse. Gardner was assured that the Letters of Credit would be returned to the Bank as soon as the underwriting procedures were consummated and Grant found credit-worthy.

On the following morning Gardner issued two $50,000 Letters of Credit on behalf of the Bank in favor of Wisconsin Surety and had them delivered to Hulse.

Gardner subsequently learned that the Swoyersville Municipal Authority had rejected Wisconsin Surety Company as surety on Grant's bonds but he took no action with respect to the two outstanding Letters of Credit. The matter lay dormant until the new year when American Empire was considered as the potential surety on Grant's performance and payment bonds for the Swoyersville Project. On February 11, Charles W. Schatzman, Jr., like Hulse an employee of Hul-Mar, Inc., insurance agency, requested from the Bank a $100,000 Letter of Credit for the benefit of American Empire similar to the ones already issued in favor of Wisconsin Surety Company by the Bank. The request was denied. American Empire, through its agents, continued to press for the $100,000 Letter of Credit. On March 27, 1974, the Bank issued a $100,000 Letter of Credit in favor of American Empire in exchange for the two outstanding $50,000 Letters of Credit which named Wisconsin Surety as beneficiary. The jury found by special verdict that Hulse represented to the Bank that if the $100,000 Letter of Credit were issued for the benefit of American Empire, it would be returned when American Empire had concluded its underwriting procedures with respect to Grant and found Grant credit-worthy. The jury further found that the Bank relied on Hulse's representation in the issuance of the Letter of Credit on March 27, 1974.[1] Counsel did

---

1. The text of the March 27, 1974 Letter of Credit is as follows:

American Empire Insurance Co.
215 Washington Street
Watertown, New York 13601
Gentlemen:

We authorize you to draw on us at sight to the extent of One Hundred Thousand and no/ _____($100,000.00) Dollars under the circumstances set forth below.

Drafts must clearly specify the number of this letter of credit and be presented to us not later than the 15th day of October 1974, or any extension of said date as hereinafter provided.

Your draft must be accompanied by your certification that you have incurred an obligation by reason of your having executed as

surety on one or more bonds wherein C. G. Grant Construction Corporation, R. 919 Wyoming Avenue, Wyoming, Pennsylvania 18644 (hereinafter called Principal) is principal.

It is a condition of this letter of credit that it shall be extended for additional periods of one year each from the present or future expiration date hereof, unless thirty days prior to such date we shall notify you in writing that we elect not to renew this letter of credit for such additional period. Upon receipt by you of such notice, you may draw hereunder by means of your draft on us at sight accompanied by your certification that you continue to be obligated as surety on one or more bonds wherein the principal is principal.

When you have determined that your obligation under such bond or bonds is extinguished you will, in the event there are no conflicting claims therefor, refund to us the amount paid

not avail themselves of the opportunity to submit additional special verdict questions to the jury.

The bank's willingness to issue the three Letters of Credit was predicated on its desire to enable Grant, which was heavily indebted to the Bank, to begin work and complete its contract on time.

American Empire concluded its "underwriting procedures" and found Grant credit-worthy sometime prior to April 25, 1974. The Bank then insisted on the return of the $100,000 letter of credit. Hulse, apparently in agreement with the Bank's position that the letter should be returned, attempted to assist the Bank in acquiring its surrender from the insurance company. (See Defendant's Exhibit 17).[2] However, the home office of American Empire resisted the Bank's demands, disclaiming any authority on the part of Hulse to make the agreement with the Bank for the return of the Letter of Credit. The insurance company's position was not taken in bad faith. There is no indication that American Empire ever directly approved or had actual knowledge of Hulse's representations.

After a series of negotiations, the Bank and American Empire exchanged the $100,000 Letter of Credit for a $50,-000 Letter of Credit on June 20, 1974, without any assurances from American Empire that the $50,000 Letter of Credit would be returned prior to its expiration date of October 15, 1974. Since Grant had been found credit-worthy, a condition relating to creditworthiness attached to the June 20, 1974 Letter of Credit would have been illogical.

On September 5, 1974, American Empire executed a sight draft on the Bank for $50,000 in accordance with the provisions of the irrevocable Letter of Credit issued June 20, 1974. It also certified, as required by the terms of the Letter, that it had incurred obligations in excess of $50,000 by reason of having executed, as surety, bonds in which Grant was the principal. Counsel stipulated at trial that American Empire actually did incur such obligations. The drafts and certification were properly submitted to the Bank which, on September 10, 1974, refused payment.

American Empire brought suit to enforce the Bank's obligation under the Letter of Credit of June 20, 1974. A jury trial, limited to two specific disputed issues of fact, was held on February 1 and February 2, 1976. The jury's findings on those special verdict questions were related above. The Court has filed supplemental findings of fact immediate-

---

by us to you under this letter of credit less any amounts which have been used by you in payment of any obligation, loss, cost, damages and expenses of whatever kind or nature (including reasonable attorney fees) which have been sustained or incurred by reason or in consequence of having executed as surety such bond or bonds.

We engage with you that drafts drawn in conformity with the conditions of this credit will be duly honored by us.

Very truly yours,

THE HANOVER NATIONAL BANK OF WILKES–BARRE, PA.

Russell E. Gardner
President

2. (On stationery of Hul-Mar, Inc.):
April 25, 1974
Hanover National Bank
520 South Main Street
Wilkes Barre, Pennsylvania
ATTENTION: Mr. Russell Gardner

RE: C. G. Grant Construction Corporation
The letter of credit that you issued on behalf of this contractor to the American Empire Insurance Company is in the possession of the bond department of the American Empire Insurance Company. The reason for this requirement was because of the urgency of providing a performance bond for this firm and American Empire was being asked to waive their normal underwriting procedures which are done before a bond is issued. As collateral, the $100,000. irrevocable letter of credit was required. However, after the underwriting procedures were finished and this firm investigated, we have determined that the requirement of a letter of credit was not necessary.
Therefore, we are sending our report and request to the American Empire Insurance Company for the return of the irrevocable letter of credit.
HUL-MAR, INC.
Morton F. Hulse
MFH/pad

ly prior to the filing of this opinion. Presently before the Court is the task of determining the proper judgment. Since the facts on which this case depends are not in dispute, this case should have been presented to the Court for decision on pre-trial cross motions for summary judgment supported by appropriate affidavits or stipulations.

The first matter to be resolved is the Bank's contention that, as a national bank, it had no power to issue this type of Letter of Credit. It is long-established that no rights arise on an *ultra vires* contract, even if the contract is wholly performed. *Texas & Pacific Railway Company v. Pottorff,* 291 U.S. 245, 260, 54 S.Ct. 416, 420, 78 L.Ed. 777, 785 (1934); *Buckley v. Southwestern National Bank,* 88 F.2d 263 (3d Cir. 1937). American Empire does not challenge the proposition that a bank has no power to act as a guarantor or surety upon the obligation of another. It argues, rather, that since the Bank had a financial interest in Grant's ability to perform, the issuance of the Letter of Credit was within the scope of the Bank's "business interest" and thus enforceable. The sole question, therefore, is whether the document in question here, even though styled a "Letter of Credit", is in effect a surety contract and, consequently, unenforceable as an *ultra vires* obligation of a national bank.

The Bank originally undertook to pay to American Empire $100,000 in the event that (a) Grant defaulted in its performance of the Swoyersville Project, (b) American Empire was required to perform under its bond and (c) American Empire incurred losses in excess of $100,-000 by reason of such performance. On the surface, this assurance by the Bank seems to cast it in the classic role of a surety or guarantor by its promise to answer for the performance of some obligation of another who is, in the first instance, liable for that performance. Cf. *Asociacion de Azucareros de Gautemala v. United States National Bank of Oregon,* 423 F.2d 638 (9th Cir. 1970). However, the one recent case which has analyzed in-depth the use of the Letter of Credit in this type of situation, *Barclays Bank v. Mercantile National Bank,* 481 F.2d 1224 (5th Cir. 1973), holds otherwise. There is no Third Circuit case on point. Thus, the question facing this Court is whether it agrees with the conclusion reached by *Barclays Bank.*

There are several factual differences between this case and *Barclays Bank.* However, none of them serves materially to distinguish the two situations. In *Barclays Bank,* the underlying obligation, failure of which would trigger the beneficiary's rights under the Letter of Credit, was the repayment of a loan rather than the performance of a construction contract. Also, the obligor bank, Mercantile National Bank, was not the original issuer of the Letter. Nevertheless, as a "confirming bank" it was held to be obligated as if it had itself issued the original Letter of Credit.

Although a large part of the opinion dealt with the question of the so-called confirming bank's status, *Barclays Bank* did address the contention that the Letter of Credit was *ultra vires* as the act of a surety or guarantor and rejected the argument under the facts of that case. Unlike the remainder of the opinion which is extensive and thorough, this conclusion is not explicated at length. Nevertheless, it is a clear holding that the action of a national bank in issuing a Letter of Credit identical in substance to the one now before this Court is valid and creates an enforceable contract. To demonstrate the nearly perfect parallelism between this case and *Barclays Bank,* it is possible to quote from the latter's recapitulation of the circumstances out of which it arose and simply substitute the names of the analogous parties and transactions from the case before this Court:

"Instead of merely relying on the [performance] of [Grant] . . . , [American Empire] sought a letter of credit from a party who was apparently in better financial condition and more easily accessible than [Grant]. The relationship with [the Hanover

Bank] was thus born. [The Bank] was willing to issue its letter of credit because of its expectation of receiving a monetary reward from [Grant] for aiding [Grant] in obtaining the [bond] from [American Empire]. It is most significant that the device chosen by [American Empire] and [the Bank] to be the basis of their relationship was the letter of credit which results in the creation of a relationship independent of the underlying transaction between the issuer of the credit and its customer, or between the customer and the beneficiary of the credit." At page 1239.

The Letter of Credit which is the subject of this suit falls within the Uniform Commercial Code's definition of such an instrument. Act of April 6, 1953, P.L. 3, § 5–103(1)(a), 12A P.S. § 5–103(1)(a).[3] It was issued in order to enable the Bank's customer, Grant, to acquire bonding and provided that the Bank would honor drafts for payment upon compliance by American Empire with the conditions specified in the Letter. The Bank, oblivious in its post-trial brief to the contrary holding in *Barclays Bank,* contends that this instrument, which has every outward appearance of a legitimate Letter of Credit, is nevertheless an impermissible guaranty by the Bank and, therefore, unenforceable. The Court does not agree.

The Bank's contention overlooks the primary quality of its obligation to American Empire as opposed to the secondary liability to which a true guarantor or surety is exposed. In the ordinary bonding situation, the dissatisfied Owner of a project must first move against the contractor. If satisfaction is not obtained from the primary contractor, the Owner then turns, *secondarily,* to the

surety for completion of the project. However, in the factual situation before the Court, no analogous secondary rights or liabilities are created. No third party participated in the negotiations with respect to, was named in, or can sue under the Letter of Credit in question. *Only* the primary beneficiary, American Empire, can acquire any rights of action under it and the Bank can never be liable to, for example, the Swoyersville Municipal Authority, the Owner. Given this analysis of the transaction, we agree with the conclusion of the Court in *Barclays Bank* that this type of Letter of Credit is not *ultra vires* for a national bank and is enforceable against it.

The Bank could have achieved precisely the same result by lending an additional $100,000 to Grant which Grant could then have used as security to induce American Empire to issue bonding in advance of the completion of its underwriting investigation. Such a loan would have been perfectly valid. In fact, the Bank viewed its dealings with American Empire much the same as a loan. The $100,000 face amount of the Letter of Credit was included in the calculation of the Bank's total loans to Grant for purposes of per customer statutory lending limits.

American Empire's sight draft complied in all respects with the written conditions of the Letter of Credit of June 20, 1974.

■ The Bank, in addition to its above-discussed position concerning the Letter's validity, also defends its failure to honor the draft by citing Hulse's representations and the subsequent failure of American Empire to return the Letter of Credit in compliance with them. The Bank's position, in effect, is that as a result of Hulse's statements, an oral

---

**3.** § 5–103(1)(a) reads as follows:

"5–103. Definitions.

(1) In this Article unless the context otherwise requires

  (a) "Credit" or "letter of credit" means an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5–

102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. A credit may be either revocable or irrevocable. The engagement may be either an agreement to honor or a statement that the bank or other person is authorized to honor."

modification of the written relationship between American Empire and the Bank had occurred which American Empire breached when it failed to return the Letter of Credit to the Bank. This argument assumes that Hulse's representations fall within his actual or apparent authority as an agent for American Empire and are therefore attributable to it. The validity of that assumption is dubious. Cf. *Tanner v. WIOO, Inc.,* 528 F.2d 262 (3d Cir. 1975). However, the Court need not resolve that issue. Even assuming Hulse's authority to make such statements, the Bank's attempt to introduce them as evidence of an oral modification of the Letter of Credit is in clear contravention of the parol evidence rule.

Pennsylvania Courts have been unwavering in their refusal to vitiate that rule. ". . . [T]he parol evidence rule . . . must be firmly maintained if the integrity of written instruments is to be sustained instead of being rendered meaningless." *Sokoloff v. Strick,* 404 Pa. 343, 346–347, 172 A.2d 302, 303 (1961); "How often do we have to reiterate that we intend to uphold the integrity of written contracts and that we will not permit them to be altered, modified, changed, circumvented, or effectually nullified by parol evidence—in the absence of fraud, accident or mistake which induced or was contemporaneous with the written agreement and was omitted therefrom by fraud, accident or mistake. [citing 9 Pennsylvania cases]" *McWilliams v. McCabe,* 406 Pa. 644, 656, 179 A.2d 222, 228 (1962); see also *Keyser v. Margoles,* 422 Pa. 553, 560, 223 A.2d 13 (1966).

■ The questionable behavior by Hulse does not undo the parol evidence rule's applicability to this case. Even if it is assumed to be fraud, it is not of the type which permits the introduction of evidence concerning oral modifications of the terms of a written agreement. A mere breach of good faith or a broken promise to do or refrain from doing something in the future is not the species of fraud which will trigger an exception to the parol evidence rule. See

*Fidelity T. & T. Co., v. Garland,* 291 Pa. 297, 302–303, 139 A. 876 (1927); *Sokoloff v. Strick, supra,* 404 Pa. at 348, 172 A.2d 302. When oral evidence of a modification of a written contract is sought to be introduced, it must be shown that the omitted term itself was left out by reason of fraud, accident, or mistake. *Speier v. Michelson,* 303 Pa. 66, 154 A. 127 (1931); *Sokoloff v. Strick, supra,* 404 Pa. at 348–349, 172 A.2d 302. There is no contention in this case that Hulse induced the Bank by fraud to omit from the Letter of Credit a provision requiring its return by the insurance company to the Bank at the conclusion of American Empire's underwriting procedures. The failure of the Bank to include such a provision in the Letter of Credit which the Bank itself prepared is unexplained.

■ In addition to the foregoing, American Empire is also entitled to recovery under the general principles of accord and satisfaction. 1 Am.Jur.2d, Accord and Satisfaction; see also *Nash v. Atlantic White Tower System, Inc.,* 404 Pa. 83, 170 A.2d 341 (1961); *Meaker Galvanizing Co. v. McGinnis & Company,* 272 Pa. 561, 116 A. 400 (1922); *Laughead v. Frick Coal Company,* 209 Pa. 368, 58 A. 685 (1904). At sometime prior to June 20, 1974, when it was apparent that American Empire had completed its underwriting procedures, the Bank sought to enforce American Empire's alleged obligation to return the $100,000 Letter of Credit. The home office of American Empire took the good-faith position that the representations made by its agent Hulse were outside the scope of his authority, were not binding upon it, and were inadvisedly relied upon by the Bank. The parties, justifiably uncertain about the validity of their respective positions, agreed to the substitution of a $50,000 Letter of Credit. This arrangement, be it characterized as "accord and satisfaction" or "compromise and settlement" or whatever, was intended to resolve the disagreement concerning the original Letter and had the effect of cutting off any claims by the Bank that the Letter was unenforceable as the product

of fraud by an agent of American Empire.

The conclusion that this exchange of Letters of Credit was to settle a dispute between the two parties is buttressed by a letter written to American Empire by Bank President Gardner on June 19, 1974. (Defendant's Exhibit 19).[4] That letter, which speaks in terms of an "exchange", makes no mention whatsoever of a continuation by the Bank of its demand that the compromise Letter of Credit be returned, pursuant to any representations made by Hulse, when Grant was found credit-worthy. Indeed, such a condition could not attach because Grant had previously been found credit-worthy by American Empire. The Court is of the view that the Bank in substituting a smaller Letter of Credit sought to reduce its potential liability in an uncertain situation. As its part of the bargain, American Empire reduced by 50% the amount of its possible recovery in the event that it attempted to enforce the Letter. Agreements like this which settle genuine disputes without resort to the courts are to be encouraged. This Court is of the view that, even if the first Letter of Credit was unenforceable by reason of Hulse's representation, American Empire is entitled to recovery under the compromise Letter of Credit dated June 20, 1974 based on the doctrine of accord and satisfaction.

An appropriate order will issue directing the entry of judgment in favor of American Empire.

4.                              June 19, 1974

American Empire Insurance Company
215 Washington Street
Watertown, New York 13601
Gentlemen:
    This concerns our relations with the C. G. Grant Construction Corporation and some bonding you have done for them.
    As we understand it, you are to surrender to us our Irrevocable Letter of Credit #2–74, dated March 27, 1974, in the amount of $100,-000.
    In exchange, we are to give you an Irrevocable Letter of Credit for $50,000 to mature Oc-

## SUPPLEMENTAL FINDINGS OF FACT

THE BACKGROUND OF THESE SUPPLEMENTAL FINDINGS OF FACT IS AS FOLLOWS:

A jury trial in the above-captioned case was held on February 1 and 2, 1976. On February 2, 1976, the jury returned its answers to two special verdict questions submitted to it. Pursuant to F.R. Civ.P. 49(a), the Court makes the following supplemental findings with respect to facts whose submission to the jury was not demanded by either party:

1. The willingness of The Hanover National Bank (Bank) to issue Letters of Credit in favor of surety companies who in exchange therefor agreed to the bonding of the Grant Construction Company (Grant) prior to the completion of their underwriting investigations was predicated on the Bank's desire to enable Grant, which was heavily indebted to the Bank, to perform its contract with the Swoyersville Municipal Authority on time.

2. American Empire did not directly approve nor did it have actual knowledge of representations by its agent Morton F. Hulse concerning the return of the Letter of Credit issued by the Bank in favor of the American Empire Insurance Company on March 27, 1974.

3. American Empire concluded its "underwriting procedures" and found Grant credit-worthy sometime prior to April 25, 1974.

tober 15, 1974, in substantially the same form and under the same conditions as outlined in our present Letter of Credit with you.
    We understand that Mr. Madden is to pick up the $100,000 Letter of Credit from you and shall deliver to us upon receipt by him of a Letter of Credit for $50,000 to your order.
    If there is any question on this matter, please call.
                    Very truly yours,
                    Russell E. Gardner
                    President

4. Prior to the issuance of the Letter of Credit in favor of American Empire dated June 20, 1974, the Bank knew that American Empire had concluded its "underwriting procedures" and had found Grant credit-worthy.

5. No representations concerning the return of the June 20, 1974, Letter of Credit prior to its expiration date of October 15, 1974 were made by American Empire or relied upon by the Bank in the issuance of that Letter.

## JUDGMENT

This action came on for trial before the Court and a jury, Honorable Malcolm Muir, United States District Judge, presiding, and the issues having been duly tried and the jury having duly rendered its Special Verdict on February 2, 1976 and in accordance with the Court's Opinion and Order filed this date,

It is Ordered and Adjudged

That the plaintiff, American Empire Insurance Company recover of the defendant, The Hanover National Bank of Wilkes-Barre the sum of $50,000.00, with interest thereon as provided by law, and its costs of action.